UNITED STATES for the Use and Benefit of KINLAU SHEET METAL WORKS, INC., Plaintiff-Appellant,

v.

GREAT AMERICAN INSURANCE COMPANY et al., Defendants-Appellees.

No. 75–2282.

United States Court of Appeals, Fifth Circuit.

Aug. 20, 1976.

Robert M. Helton, Wichita Falls, Tex., J. G. Souris, Vernon, Tex., for plaintiff-appellant.

Chas. Oldham, Wichita Falls, Tex., for Great American Ins. Co.

Elmer·H. Parish, Wichita Falls, Tex., for J. W. Bibb, Inc.

Before RIVES, GOLDBERG and GEE, Circuit Judges.

GEE, Circuit Judge:

Appellant supplier sued a general contractor and its payment bondsman when a subcontractor failed to pay supplier in full for three improvement projects on a Air Force base. These were a theater job (job 1) that ended on August 16, 1973, a nondestruct-lab job (job 2) that ended on May 3, and a child-care-center job (job 3) that ended on May 23. This appeal challenges the lower court's finding that appellant had not satisfied the 90-day notice requirement which the Miller Act, 40 U.S.C. §§ 270a *et seq.* (1970), imposes as a prerequisite to recovery against a general contractor for work performed or materials furnished a subcontractor. We affirm.

▇ Section 270b of the Miller Act provides that on any federal construction project for which § 270a requires the general contractor to furnish a payment bond to the United States, a supplier who within 90 days after the last labor was performed or material delivered is not fully paid can sue on the bond

> *upon giving written notice* to [the general] contractor *within ninety days* from the date on which [the supplier] did or performed the last of the labor or furnished or supplied the last of the material for which such claim is made, stating with substantial accuracy the amount claimed and the name of the party to whom the material was furnished or supplied or for whom the labor was done or performed. (emphasis added)

As we held in *United States ex rel. Jinks Lumber Co. v. Federal Ins. Co.,* 452 F.2d 485 (5th Cir. 1971), the written notice and accompanying oral statements must inform the general contractor, expressly or impliedly, that the supplier is looking to the general contractor for payment so that "it plainly appears that the nature and state of the indebtedness was brought home to the general contractor." *Id.* at 488, *quoting Houston Fire & Cas. Ins. Co. v. United States ex rel. Trane Co.,* 217 F.2d 727, 730 (5th Cir. 1954).[1]

---

1. *See also United States ex rel. Bailey v. Freethy,* 469 F.2d 1348, 1350–51 (9th Cir. 1972) (citing cases, including *Jinks,* and approving substantially the same test, *i. e.,* that the notice

Here the supplier's president, on July 26, 1973,[2] delivered to the general contractor's agent copies of monthly statements and summary sheets showing for each job the amount that the subcontractor owed the supplier, the amount paid to date, and the balance. No demand, oral or written, was made on the general contractor at that time by appellant, nor was he given any other indication that appellant was looking to him for payment. Then, on October 31, the supplier by letter[3] demanded payment from the subcontractor and sent copies to the general contractor and the local agent for his surety. The lower court found that the July 26 materials failed to meet the *Jinks* notice standard as to jobs 1, 2 and 3; that the October 31 letter was not timely as to jobs 2 and 3 and thus should only be considered as to job 1; and that, in any case, the October letter failed to convey sufficient notice as to job 1. We agree in all respects. The July 26 material, delivered before completion of job 1, was premature and could not even be considered as possible notice for that job. *See National Union Indem. Co. v. R. O. Davis, Inc.,* 393 F.2d 897, 900 (5th Cir. 1968). The October 31 letter, as the lower court found, was sent more than 90 days after the last labor was performed and the last materials were furnished for jobs 2 and 3 and thus could not be considered as notice for those jobs. And we uphold as not clearly erroneous the court's findings that neither letter conveyed sufficient notice for any of the jobs.

AFFIRMED.

"must inform the prime contractor, expressly or by implication, that the supplier is looking to the contractor for payment of the subcontractor's bill"). The purpose of notice, which is subsidiary to the Act's main purpose of protecting those whose labor and materials are used, is to protect the general contractor by fixing the date beyond which, absent notice, he will not be liable for the subcontractor's debts. *Noland Co. v. Allied Contractors, Inc.,* 273 F.2d 917, 920–21 (4th Cir. 1959).

2. At which time the subcontractor, who first informed the supplier in August that it intended to make no additional payments, was still promising to pay. In fact, it did make four substantial payments in early August, about

which appellant did not advise the general contractor or its surety.

3. The body of this letter, addressed to the subcontractor, states:

   Enclosed is a copy of our record of your due and past due accounts on the above referenced jobs. Repeated requests for payment has been made. Please help us keep a friendly relationship and keep this matter out of the courts by letting your check come forward now.