**UNITED STATES of America for the Use of BROTHERS BUILDERS SUPPLY COMPANY, Plaintiff,**

v.

**OLD WORLD ARTISANS, INC.; Ticor Construction Co., Inc.; and the Central National Insurance Company of Omaha, Defendants.**

Civ. A. No. 4:87–cv–2–HLM.

United States District Court, N.D. Georgia, Rome Division.

Sept. 30, 1988.

E. Carl Prince, Jr., Office of E. Carl Prince, Jr., Carrollton, Ga., for U.S. of America for the Use of Brothers Builders Supply Co.

Jack Freddie Witcher, Office of Jack Freddie Witcher, Bremen, Ga., for Old World Artisians, Inc.

Gary W. Bross, Philip Lee Westee, Office of Gary W. Bross, Decatur, Ga., for Ticor Const. Co., Inc.

Glen W. Clark, Jr., Palmer Howard Nowak & Clark, Lithia Springs, Ga., for Cent. Nat. Ins. Co. of Omaha.

## ORDER

HAROLD L. MURPHY, District Judge.

This case is before the Court on various motions for summary judgment filed by the plaintiff and the defendants. The motions shall be considered *seriatim.*

This action was brought by Plaintiff Brothers Builders Supply Company (Builders Supply) to recover on a construction payment bond issued by Central National Insurance Company of Omaha (Central National), pursuant to the Miller Act, 40 U.S. C. § 270a, *et seq.* The bond was issued with Defendant Ticor Construction Company, Inc., (Ticor), a general contractor, listed as principal, and Central National as surety. Ticor had contracted to construct camper warehouses on a federal government job at Lake Allatoona, Georgia. Builders Supply supplied materials and equipment to Defendant Old World Arti-

sans, Inc. (Old World), who worked as a subcontractor for Ticor.

### The Stipulated Facts

In the Pretrial Order, the parties stipulated to the following facts:

In 1985, Defendant Ticor entered into a construction contract with the United States Army Corps of Engineers. In connection with this contract, Central National issued a payment bond in the amount of $147,500.10, pursuant to 40 U.S.C. § 270b, the Miller Act.

On September 5, 1985, Ticor entered into a subcontract with Defendant Old World for the performance of carpentry work in furtherance of the bonded general contract. At various times afterwards, Old World ordered construction materials and supplies from Builders Supply for use on the project. These materials and supplies were delivered to the job site and used on the project.

On November 11, 1985, officers of Ticor and Builders Supply discussed the account of Old World by telephone. Builders Supply advised Ticor of the outstanding amounts that Old World owed Builders Supply for materials and supplies. Builders Supply further advised Ticor that additional shipments would not be made to Old World for use on the project without payment. Ticor agreed to pay for the current shipment and paid Builders Supply $3,500.00. Ticor also agreed to make all further disbursements to Old World jointly to Builders Supply and to Old World. Builders Supply then resumed providing material and supplies to Old World.

On November 21, 1985, Ticor made written notification of its intention to make future payments to Old World jointly to Builders Supply and Old World. Additional materials and supplies then were delivered by Builders Supply to Old World. No additional payments were made either by Ticor or Old World to Builders Supply, or by Ticor to Old World.[1]

The last item of materials and supplies ordered from and provided by Builders Supply to Old World was a tape measure, which was ordered and delivered to Old World for use on the job on January 9, 1986. Prior to that delivery, Old World ordered a shipment of red-wood timber which on January 7, 1986, was delivered to Old World's place of business. On January 8, 1986, the timber was delivered by Old World to the job site. Old World last performed work on the project on January 9, 1986.

Builders Supply attempted to contact Ticor concerning the account of Old World at various times after November 21, 1985, and prior to April 8, 1986, but Ticor's telephone had been disconnected and Builders Supply was unable to contact Ticor.

On April 8, 1986, a written notice of the claim of Builders Supply in the principal amount of $11,668.95, together with interest thereon in the amount of one and one-half percent per month was mailed to Ticor at the address set forth on the bond. The notice was returned by the Postal Service marked "moved, not forwardable."

On January 5, 1987, Builders Supply filed this suit against Central National, Ticor, and Old World. Old World filed a cross-claims against Ticor and Central National on August 12, 1987.

The account between Old World and Builders Supply for materials and services used for the project aggregated to $11,668.95, principal and $2,076.45, interest as of February 1, 1987. There is no claim or issue involving an award of attorneys' fees.

### The Motion for Summary Judgment of Central National Against Builders Supply and Those of Builders Supply Against Central National, Ticor, and Old World

▮ The central issue involved in the motion for summary judgment of Central National against Builders Supply and that of Builders Supply against Central National, Ticor, and Old World is whether Build-

---

1. The parties have stipulated that a dispute exists between Ticor and Old World concerning whether additional payments were ever earned by Old World, or are otherwise due, and that dispute should be bifurcated for later review by the Court.

ers Supply gave proper and timely notice of its claim against Ticor in accordance with the requirements of the Miller Act, 40 U.S. C. § 270b. The Act provides as follows:

[E]very person having direct contractual relationship with a subcontractor but no contractual relationship express or implied with the contractor furnishing said payment bond shall have a right of action upon the said payment bond upon giving written notice to said contractor within ninety days from the date on which such person ... furnished or supplied the last of the material for which such claim is made, stating with substantial accuracy the amount claimed and the name of the party to whom the material was furnished or supplied.... Such notice shall be served by mailing the same by registered mail, postage prepaid, in an envelope addressed to the contractor at any place he maintains an office or conducts his business ... or in any manner in which the United States Marshal of the district in which the public improvement is situated is authorized by law to serve summons.

40 U.S.C. § 270b. Failure to comply with the ninety day notice requirement will bar a claim on the payment bond. *United States, Etc., v. Fidelity and Guaranty Co.,* 656 F.2d 993, 995 (5th Cir. Unit B Sept. 1981).

In the instant case, Builders Supply was required to give notice of its claim to Ticor within ninety days of the date it last delivered or furnished material for the job. April 8, 1986, the day that Builders Supply gave formal written notice to Ticor was exactly ninety days after January 9, the date when the last item from Builders Supply, the tape measure, was furnished. If this tape measure constitutes "material" under the Miller Act, then notice was timely. If not, then the last "material" supplied was the red-wood timber, delivered to Old World more than ninety days prior to formal notice.

If the formal notice given was not timely, then the question is whether informal notice given prior to April 8 was sufficient to satisfy the requirements of the Act.

Alternatively, notice might have been timely if the effective date of the delivery of the red-wood timber was when Old World delivered it to the job site on January 8, 1986, rather than when Builders Supply delivered it to Old World on January 7, 1986.

### The Tape Measure

■ This case turns upon the narrow legal question of whether the tape measure supplied was "material" as opposed to "capital equipment" under the Miller Act. The Act obligates the surety for the payment of persons furnishing "labor and material in the prosecution of the work provided for in [the] contract." 40 U.S.C. § 270a(a)(2). The general concept behind this distinction is that the purpose of the Miller Act is to provide protection for suppliers who supply material for government jobs. The supplier can look to the Miller Act payment bond for material supplied to a subcontractor and used in a government job. The Act does not provide protection for capital equipment that the subcontractor purchases and can use for subsequent non-government jobs.

■ The courts have refrained from an all-inclusive definition of "material furnished in the prosecution of the work." *See United States for Use of Byrne & Co. v. Fire Ass'n. of Philadelphia,* 260 F.2d 541, 544 (2d Cir.1958), *citing Massachusetts Bonding & Insurance C. v. United States,* 88 F.2d 388 (5th Cir.1937). The inquiry begins with the principle that "the Miller Act is remedial and must be construed to effect Congress's purpose to protect those whose labor and materials go into public projects." *Clifford F. MacEvoy Co. v. United States ex rel. Calvin Tomkins Co.,* 322 U.S. 102, 107, 64 S.Ct. 890, 893, 88 L.Ed. 1163 (1944). While material provided for the work is recoverable, "the cost of tools may not be claimed under the Miller Act" because they are equipment which the subcontractor may continue to use and are not consumed in the public project. *Ibex Industries, Inc. v. Coast Line Waterproofing,* 563 F.Supp. 1142, 1146 (D.D.C.1983). The *Ibex* court held

that hoses, axes, hammers, goggles, brushes, and mop handles, among other things, were tools and not material for the purpose of the Act. Similarly, the Fourth Circuit has held that *reusable* dredging pipe was not material under the Act. *United States for the Use of Sunbelt Pipe v. United States Fidelity*, 785 F.2d 468 (4th Cir.1986). The Court reasoned that

> A thing which may reasonably be expected to be removed by the contractor and used in subsequent jobs is a part of the contractor's capital equipment, but something which is reasonably expected to have no utility or economic value to the contractor after the completion of the work may be classified as material.

*Id.* at 470.

■ Thus, the classifying principle that the Court must use in the instant case is whether or not the tape measure was something "reasonably expected to be consumed, or substantially consumed, in the performance of the work." *See id.* Moreover, in distinguishing between material and capital equipment, the Court must approach the problem from the perspective of the reasonable expectation of the *supplier*. *See Boyd Callan, Inc. v. United States ex rel. Steves Industries, Inc.*, 328 F.2d 505, 510 (5th Cir.1964); *Sunbelt Pipe*, 785 F.2d at 470; *Ibex*, 563 F.Supp. at 1146.

In *Massachusetts Bonding*, 88 F.2d at 389–90, the Fifth Circuit held that replacement parts for trucks used in constructing a levee were "material" under the Act. The Court reasoned that generally such parts would be considered to be equipment that would last over several jobs. Nevertheless, in the course of building the levee, enough parts were furnished (some 50,000 repair parts) to have rebuilt each truck several times almost completely. *Id.* at 388–89. The court reasoned that while a rear axle normally would last a few years, in such a situation they were more like "shovels, drill points, and the like, [which] though equipment in a sense, because they wear out quickly and break often, are more like materials consumed in, but not built into, the work." *Id.* at 389.

■ The Court finds this reasoning persuasive in this instance. Nevertheless, the determination of whether the tape measure, from the supplier's perspective, would reasonably be expected to be consumed in the Lake Alatoona job is a question of fact which cannot be determined by the Court on summary judgment. The evidence shows that the tape measure was in fact a replacement for a broken tape measure. Moreover, Builders Supply's affidavit of its officer, John D. Fulford, states the following:

> Normally, on a project the size of the Lake Allatoona job, small items such as tape measures and saw blades are lost, broken or simply used to the extent that they need replacing.

Builders Supply thus has submitted evidence that it had the subjective expectation that tape measures would be consumed in the project. The ultimate question of whether this expectation was reasonable is a factual question, narrow as it may be, which must be determined by the fact-finder based upon testimony as to the nature of tape measures generally and the nature of the work at Lake Alatoona.

Builders Supply's motions and cross motion for summary judgment, accordingly, must be DENIED; and Central National's motion for summary judgment on this issue likewise must be DENIED.

*Informal Notice*

■ Builders Supply contends that even if the tape measure were not "material" under the Act, timely informal notice was given, and Ticor had full knowledge of the claim of Builders Supply against it. It bases this contention on the stipulated facts that Ticor and Builders Supply discussed the account by telephone, including the amount owing, and Builders Supply advised Ticor that additional shipments would not be made without payment. Ticor paid Builders Supply for a current shipment, and Ticor agreed to pay all future amounts due to Old World by joint check to Builders Supply and Old World.

On the present record before the Court on summary judgment, Builders Supply's

argument is without merit. The Supreme Court has held that the Act's specific requirements of "registered mail, postage paid," etc., are not necessary "when the required written notice within the specified time [has] actually been given and received." *Fleisher Co. v. United State*, 311 U.S. 15, 18–19, 61 S.Ct. 81, 83, 85 L.Ed. 12 (1940). The Fifth Circuit further relaxed the requirements where written letters from the general contractor demonstrated that it had received the information required to be provided by the supplier. *United States for the Use of Jinks Lumber Co. v. Federal Insurance Co.*, 452 F.2d 485, 487–88 (5th Cir.1971). The Court noted that the notice requirement of the Act "is to alert a general contractor that payment will be expected directly from him, rather than from the subcontractor with whom the materialman dealt directly." *Id.* at 487.

Similarly, in *Houston Fire & Cas. Co. v. United States for the Use of the Trane Co.*, 217 F.2d 727 (5th Cir.1954), the court held that "[i]t is not necessary that the writing relied on be signed by the supplier, it is sufficient that there exists a writing from which, in connection with oral testimony, it plainly appears that the nature and state of the indebtedness was brought home to the general contractor." *Id.* at 730; *see also Coffee v. United States for Use of Gordon*, 157 F.2d 968, 970 (5th Cir.1946). In *Houston*, *Jinks*, and *Coffee* there existed writings, either to or from, the general contractor that contained the information that the statute requires be brought home to the contractor.

■ Some writing that evidences the provision of this information therefore is still necessary to assert a claim under the Act. For example, in *United States, Etc. v. Great Am. Ins. Co.*, 537 F.2d 222, 223–24 (5th Cir.1976), the court held that the statute was not satisfied by the supplier's sending the contractor copies of monthly statements and summary sheets showing for each job the amount that the subcontractor owed the supplier, the amount paid to date, and the balance. The information was inadequate because *no demand*, oral or written was

made, and the contractor was given no other indication that the supplier was looking to him for payment. *Id.* at 223–24.

Builders Supply's assertion that adequate notice was given in the instant case fails for several reasons. First, there is no evidence that the telephone conversation constituted a demand made to Ticor for payment for the entire indebtedness. It shows at most only a demand for payment for a current shipment. Indeed, much of the material for which this action has been brought was supplied subsequent to the time of the telephone conversation and the letter to Old World. *See National Union Indemnity Co. v. R.O. Davis, Inc.*, 393 F.2d 897, 900 (5th Cir.1968) (March notice would be ineffective because premature for July invoice).

Second, no writing between the parties that evidences the furnishing of the information required by the Act has been submitted to the Court. The letter from Ticor to *Old World* merely stated that when Old World had completed the job, upon receipt of final payment from the owner, Ticor would issue a joint check to Old World and to Builders Supply for the balance that was due to Old World. This letter does not demonstrate the existence of a demand made by Builders Supply directly to Ticor for payment. It demonstrates only that Ticor offered additional protection to Builders Supply by issuing a joint check for "the balance due to *Old World*." Joint check arrangements do not in themselves constitute proof of notice under the Act. *See United States, Etc., v. P.W. Parker, Inc.*, 504 F.Supp. 1066, 1069–71 & n. 3 (D.Md.1980) (telephone conversation followed by a letter regarding a joint check agreement insufficient to prove notice or direct contractual relationship between supplier and contractor).

The facts only show an agreement by Ticor to pay Builders Supply directly only for the current shipment, not future shipments. The evidence fails to show that Builders Supply brought home to Ticor that it was looking to Ticor for payment for the claim asserted in this action. Builders Supply has failed to meet its burden on sum-

mary judgment to show that adequate "informal" notice was provided.

Builders Supply's motions for summary judgment on this issue therefore are DENIED; and Central National's motion for summary judgment on this issue is GRANTED.

### Direct Agreement Between Ticor and Builders Supply

Builders Supply also contends that the telephone conversation and letter from Ticor to Old World demonstrate that it had established a direct relationship with Ticor for payment for the material supplied. This argument is without merit for the same reasons that it has been determined that Builders Supply never brought it home to Ticor that it was looking to Ticor for payment. On the existing record, there is insufficient evidence to demonstrate the existence of a contract between Ticor and Builders Supply. Thus, Builders Supply's motion is DENIED on this ground, and Central National's is GRANTED on this ground.

### Notice from the Date of Delivery of the Timber

■ Also without merit is Builders Supply's argument that the commencement of the ninety-day period should be the date that Old World delivered the red-wood timber to the job site, rather than the date that Builders Supply delivered it to Old World.

The date which commenced the ninety-day period was the date that Builders Supply delivered the timber to Old World. Delivery to the job site is not even required under the Act. *See, e.g., United States for the Use of Sunbelt Pipe v. United States Fidelity*, 785 F.2d 468, 470 (4th Cir.1986). This is the only proper reading of the statute: Otherwise, the statute would not protect suppliers where the subcontractor diverts the material for his own use, and the material never reaches the site at all. Accordingly, on this issue, summary judgment is DENIED to Builders Supply and GRANTED to Central National.

### The Motion for Summary Judgment of Old World Artisans Against Ticor

The motion for summary judgment of Old World against Ticor must be DENIED as moot. Old World's Answer to the Complaint included a cross-claim against Ticor. Old World's motion is based entirely on the failure of Ticor timely and properly to file an Answer to the crossclaim.

Originally, Ticor filed its Answer to the Complaint *pro se*. The Court struck Ticor's pleadings because Ticor, as a corporation, had to be represented by counsel. Subsequently, Ticor moved the Court to allow it to refile its pleadings, including an Answer to the crossclaim of Old World. The Court granted Ticor's motion.

Accordingly, since Ticor has answered Old World's crossclaim, Old World's motion for summary judgment, which is based solely upon Ticor's failure to answer, must be DENIED.

### The Cross Motions for Summary Judgment of Old World and Central National

Central National's motion for summary judgment against Old World on Old World's cross-claim against Central National, and Old World's motion for summary judgment against Central National both shall be GRANTED and DENIED in part. Central National contends that the claim of Old World was filed outside of the time period set forth in the Miller Act for filing claims against the bonded principal. The Miller Act provides the following:

> Every suit instituted under this section shall be brought in the name of the United States for the use of the person suing in the United States District Court ... but no such suit shall be commenced after the expiration of one year after the day on which the last of the labor was performed or material was supplied by him.

40 U.S.C. § 270b(b).

In the instant case, the parties have stipulated that Old World last provided labor or materials on January 9, 1986. Old World obtained leave of the plaintiff to delay filing its Answer until August 12,

1987. Its cross-claim against Central National was also filed on that date, well over one year after the date that labor or material was last provided.

Old World contends that the filing of its cross-claim, should relate back to the date of the filing of the original Complaint, January 5, 1986, which was within the one year period. The only case that Old World cites in support of its position is *Fogel v. United Gas Improvement Co.*, 32 F.R.D. 202, 203 (E.D.Pa.1963). The court in *Fogel* merely held that a defendant could file a cross-claim three years after the filing of the original complaint, and that the local rules of the court, which limited the time for filing third-party actions, would not apply to the filing of cross-claims against co-parties. The case addressed neither statute of limitations problems nor any relation-back doctrine. The case provides Old World no support whatsoever.

■ The one-year limitation of actions is an integral part of the Miller Act, and compliance with the limitation period is a condition precedent to maintaining an action. *See United States, Etc., v. Maryland Cas. Co.*, 573 F.2d 245, 247 (5th Cir.1978).

■ While the Court has located no case which addresses the application of the Miller Act's one-year limitation to cross-claims,[2] the law that governs cross-claims generally resolves the issue. There is no provision in Rule 13(g) of the Federal Rules of Civil Procedure that a cross-claim may relate back to the date of the filing of an original complaint. The common law rule that statutes of limitations do not run against pure defenses does not apply to setoffs, counterclaims, or crossclaims that are affirmative, independent, causes of action. *See Chauffeurs, Teamsters, Etc. v. Jefferson Trucking*, 628 F.2d 1023, 1027 (7th Cir.1980), *cert. denied*, 449 U.S. 1125, 101 S.Ct. 942, 67 L.Ed.2d 111 (1981) (counterclaim).

The issue of whether a cross-claim may relate back is resolved by federal common law in actions based upon federal question jurisdiction, and upon state law when the cause of action is based upon a state statute. *Applebaum v. Ceres Land Co.*, 546 F.Supp. 17, 20 (D.Minn.1981), *aff'd*, 687 F.2d 261 (8th Cir.1982), *citing* 3 J. Moore, *Federal Practice* ¶ 13.11 at 13–247 (1980). The instant case, under the Miller Act, is of course an action based upon federal question jurisdiction.

■ In determining whether a cross-claim may relate back to the date of the original complaint, the federal courts distinguish between those wherein the defendant seeks to reduce the amount a plaintiff can recover, such as by recoupment, contribution, or indemnity, and those wherein the defendant is seeking affirmative relief. *See Ash*, 363 F.Supp. at 346. Where the claim of the defendant is an affirmative independent cause of action not in the nature of a defensive claim, the defendant must comply with the applicable statute of limitations. *Id.; Applebaum*, 546 F.Supp. at 20 (affirmative cross-claim barred by the applicable statute of limitations); *see also* 3 J. Moore, *Federal Practice* ¶ 13.11 (1980); Wright, *Law of the Federal Courts*, at 394 (3d. ed. 976).

As noted by the court in *Applebaum*, most of the decisions involving this rule have examined counterclaims rather than cross-claims. Nevertheless, as held in *Ash v. United States*, 363 F.Supp. 345, 346 (D.Neb.1973), the rationale for the rule has even stronger force with regard to cross-claims: with cross-claims there is no issue of waiver, which may be asserted against a plaintiff on counterclaims.

The cross-claim of Old World against the surety, Central National, is not a wholly distinct claim from that of Builders Supply against the surety. The claim involves

---

**2.** Various courts, however, have examined the limitation in other situations. For example, the Sixth Circuit held that the commencement of a supplier's action against the prime contractor under the Miller Act did not preserve the action against the surety who was not named in the original petition. *See United States v. Western*

*Casualty & Surety Co.*, 359 F.2d 521, 524 (6th Cir.1966); *see also United States v. MacKenzie-Foster Co.*, 207 F.Supp. 210, 211 (D.Mass.1962) (motion for intervention filed outside the one-year period was barred even though the original action was filed within the one-year period).

payment for the same material that Builders Supply seeks payment, in addition to seeking payment for its labor. The cross-claim thus is not wholly an affirmative, independent cause of action. It is based in part upon sums that Old World may have to pay to Builders Supply and for damages for which Old World may be liable to Builders Supply.

The cross-claim, to the extent that it seeks indemnity or contribution for sums it may owe to Builders Supply, relates back to the date of the filing of the original complaint and is therefore timely filed under the Miller Act. That part of the cross-claim that seeks payment for other labor, materials or damages, independent of the material for which Builders Supply seeks payment, is an independent cause of action. That part of the cross-claim does not relate back to the date of original complaint, and because it was not filed within the one-year period of the Act, it is barred. Thus, the motion of Old World is GRANTED in part and DENIED in part; and that of Central National is GRANTED in part and DENIED in part.

ACCORDINGLY, the Motion for Summary Judgment of Central National against Plaintiff Builders Supply is GRANTED in part and DENIED in part; the Cross–Motion for Summary Judgment of Builders Supply against Central National is DENIED; the Motion for Summary Judgment of Builders Supply against Old World and against Ticor is DENIED; the Motion for Summary Judgment of Old World against Ticor on Old World's Cross-claim is DENIED; the Motion for Summary Judgment of Central National against Old World on Old World's Crossclaim is GRANTED in part and DENIED in part; and the Cross–Motion for Summary Judgment of Old World against Central National on Old World's Cross–claim is GRANTED in part and DENIED in part.

IT IS SO ORDERED.