**UNITED STATES FOR THE USE OF JB SYSTEMS/ATLANTA, Plaintiff,**

v.

**FEDERAL INSURANCE COMPANY and North American Mechanical Services Corporation d/b/a North American Construction Corporation, Defendants.**

Civil Action No. 97–D–925–S.

United States District Court,
M.D. Alabama,
Southern Division.

June 26, 1998.

Joseph H. Fowler, Douglasville, GA, for plaintiff.

Wayne R. Walton, Federal Insurance Company Warren, NJ, William M. Coats, Houston, TX, Edgar Garcia, San Antonio, TX, for defendants.

## MEMORANDUM OPINION AND ORDER

DE MENT, District Judge.

Before the court is Defendants' Notion to Dismiss and Supporting Brief ("Defs.' Mot."), filed April 2, 1998. Plaintiff responded in opposition ("Pl.'s Opp'n") on April 23, 1998, and amended its response with an inadvertently omitted exhibit on April 27, 1998. Because the Parties have included, and the court has considered, evidentiary materials outside of the pleadings, the court construes and addresses Defendants' Motion as a Motion for Summary Judgment. *See, e.g.,* Fed. R.Civ.P. 12(b). After careful consideration of the arguments of counsel, the relevant law, and the record as a whole, the court finds that Defendants' Motion is due to be denied.

### JURISDICTION AND VENUE

The court properly exercises subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1441(c). The parties do not contest personal jurisdiction or venue.

### SUMMARY JUDGMENT STANDARD

On a motion for summary judgment, the court is to construe the evidence and factual inferences arising therefrom in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142(1970). Summary judgment can be entered on a claim only if it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). As the Supreme Court has explained the summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the exis-

tence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The trial court's function at this juncture is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (citations omitted). A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505; *see also Barfield v. Brierton,* 883 F.2d 923, 933 (11th Cir.1989).

The party seeking summary judgment has the initial burden of informing the court of the basis for the motion and of establishing, based on relevant "portions of 'the pleadings, depositions, answers to interrogatories, and admissions in the file, together with affidavits, if any,'" that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548. Once this initial demonstration under Rule 56(c) is made, the burden of production, not persuasion, shifts to the nonmoving party. The nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548; *see also* Fed.R.Civ.P. 56(e).

In meeting this burden the nonmoving party "must do more than simply show that there is a metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Corp. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). That party must demonstrate that there is a "genuine issue for trial." Fed.R.Civ.P. 56(c); *Matsushita,* 475 U.S. at 587, 106 S.Ct. 1348. An action is void of a material issue for trial "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita,* 475 U.S. at 587, 106 S.Ct. 1348; *see also Anderson,* 477 U.S. at 249, 106 S.Ct. 2505.

## FACTUAL BACKGROUND

Defendant North American Construction Corporation ("North American") was the prime contractor on a construction project for the United States at Fort Rucker, Alabama ("Project"). Pursuant to the requirements of 40 U.S.C. § 270a(a) ("Miller Act"), a payment bond ("Bond") was issued by Defendant Federal Insurance Company on behalf of North American.[1]

Aegis Manufacturing Company ("Aegis"), which is not a party to this action, was a subcontractor for North American. Plaintiff supplied materials to Aegis for use on the Project beginning in approximately April of 1995.[2] In approximately May of 1996, Aegis became insolvent and left the Project. Aegis was delinquent on its payments to Plaintiff for supplied materials at the time that it left the Project. Plaintiff continued to provide materials for the Project after Aegis' insolvency, until as late as approximately January 2, 1997.[3] The date that Plaintiff last supplied materials to Aegis that have been made a part of Plaintiff's claim was February 8, 1996.

---

**1.** As further described below, the Miller Act requires a government contractor to furnish a surety bond for the protection of individuals involved in a project. *See* 40 U.S.C. § 270a; *see also F.D. Rich Co. v. Indus. Lumber Co.,* 417 U.S. 116, 118, 94 S.Ct. 2157, 40 L.Ed.2d 703 (1974).

**2.** For purposes of this Order, the court notes that there is a distinction between the materials that were generally supplied for use in the Project, *see* 40 U.S.C. § 270b(b), and the supplied materials that are specifically included in Plaintiff's claim, *see* 40 U.S.C. § 270b(a).

**3.** The court notes that the evidence is at odds regarding the final date that materials were supplied for use in the Project by Plaintiff. Specifically, the Affidavit of Gary A. Yates indicates in paragraph 3 that Plaintiff "supplied goods and materials for use in [the Project] from April 1995 to March 1997." (Affidavit of Gary A. Yates ("Yates Aff."), Ex. A to Pl.'s Opp'n, ¶ 3.) In contrast, the formal notice ("Notice") sent from Plaintiff to North American provides that the date that materials were "last provided ... in connection with [the Project]" was June 17, 1996. (*See* Notice, Ex. A to Pl.'s Compl.

Beginning in approximately April of 1995, Plaintiff communicated to North American the fact that Aegis was delinquent in its payments to Plaintiff and requested payment for the delinquencies. North American assured Plaintiff that Plaintiff would receive payment for the materials at issue. In addition, also beginning in April of 1995, North American issued all payments for materials supplied by Plaintiff to Aegis via joint check.

Both before and after Aegis left the Project, Plaintiff also communicated with North American regarding other aspects of the project, including materials to be supplied, material qualifications and specifications, manuals and other information, and other aspects of the project. As noted, Plaintiff continued to deliver materials to North American after Aegis left the Project.

Plaintiff filed this action on June 10, 1997, seeking recovery from Defendants under several theories. Count One of Plaintiff's Complaint contends that Plaintiff is due payment pursuant to 40 U.S.C. § 270a–270d, the Miller Act, by virtue of Plaintiff's contractual relationship with Aegis. (Compl.¶¶ 10–17.) Count Two of the Complaint contends that Plaintiff is due payment pursuant to the Miller Act by virtue of Plaintiff's implied contractual relationship with North American. (Compl.¶¶ 19–30.) Count Three seeks recovery in quantum meruit for the value of materials provided in connection with the Project. (Compl.¶¶ 31–37.) Count Four alleges that North American is liable for payment to Plaintiff under the theory of promissory estoppel. (Compl.¶¶ 38–42.) Count Five seeks recovery for attorney's fees. (Compl.¶¶ 43–46.)

## DISCUSSION

The Miller Act, 40 U.S.C. § 270a–270d, "requires a Government contractor to post a surety bond 'for the protection of all persons supplying labor and material in the prosecution of the work provided for' in the con-

tract." *Rich,* 417 U.S. at 118, 94 S.Ct. 2157; *United States f/u/b/o Krupp Steel Products, Inc. v. Aetna Ins. Co.,* 831 F.2d 978, 980 (11th Cir.1987); *see also* 40 U.S.C. § 270a(a)(2). The posted bond must run to the benefit of the United States, and subcontractors and suppliers are permitted to sue on the bond in federal court in the name of the United States. 40 U.S.C. § 270b(b). Discussing the purpose and scope of the Miller Act, the Supreme Court has explained that:

> Section 270a(a)(2) of the Miller Act establishes the general requirement of a payment bond to protect those who supply labor or materials to a contractor on a federal project. Ordinarily, a supplier of labor or materials on a private construction project can secure a mechanic's lien against the improved property under state law. But a lien cannot attach to Government property, so suppliers on Government projects are deprived of their usual security interest. The Miller Act was intended to provide an alternative remedy to protect the rights of these suppliers.
>
> The rights afforded by the Act are limited, however, by the proviso of § 270b(a). In *Clifford F. MacEvoy Co. v. United States for Use and Benefit of Calvin Tomkins Co.,* 322 U.S. 102, 64 S.Ct. 890, 88 L.Ed. 1163 (1944), supra, this Court construed § 270b(a) to limit the protection of the Miller Act bond to those who had a contractual agreement with the prime contractor or with a "subcontractor."

*F.D. Rich Co.,* 417 U.S. at 121–22, 94 S.Ct. 2157 (citations omitted).

Moreover, the Supreme Court has stated that the Miller Act is "highly remedial in nature," and that its terms should be liberally construed. *J.W. Bateson Co. v. U.S. ex rel. Board of Trustees,* 434 U.S. 586, 594, 98 S.Ct. 873, 55 L.Ed.2d 50 (1978); *United States for Use and Benefit of Carlson v. Continental Cas. Co.,* 414 F.2d 431 (5th Cir. 1969).[4]

("Complaint").) Finally, the Yates Affidavit also provides that Plaintiff continued to supply "materials that were integral and essential to the completion of the project" through July 23, 1996 (dust caps) and January 2, 1997 (hoses, couplers, and grounding cable). (Yates Aff. ¶ 10.)

Notwithstanding these inconsistencies, the court finds, for purposes of its instant analysis and as further described below, that a determination of the last date on which materials were supplied generally for use in the Project is presently unnecessary.

**4.** Decisions of the former Fifth Circuit rendered

## I. THERE IS A GENUINE ISSUE OF MATERIAL FACT AS TO WHETHER PROPER NOTICE WAS PROVIDED PURSUANT TO THE MILLER ACT

 The Miller Act requires that:

[M]aterialmen on government construction projects who have no direct contractual relation with the general contractor must, in order to establish a right of action against the general contractor's payment bond, give the general contractor sufficient written notice of their claims within ninety days of the last day on which they supplied material for the project.

*Maccaferri Gabions, Inc. v. Dynateria, Inc.,* 91 F.3d 1431, 1436–37 (11th Cir.1996); *see also* 40 U.S.C. § 270b(a).[5]

This ninety day statutory requirement has been liberally construed with respect to the *methods* by which notice is given. *See Maccaferri,* 91 F.3d at 1436–37 (citing *Fleisher Eng'g & Constr. Co. v. United States ex rel. Hallenbeck,* 311 U.S. 15, 18–19, 61 S.Ct. 81, 85 L.Ed. 12 (1940) (notice sufficient though not sent, as Act requires, via registered mail)); *see also J.W. Bateson Co.,* 434 U.S. at 594, 98 S.Ct. 873 (Miller Act construed liberally). This requirement has, however, been interpreted more rigidly with respect to the Miller Act's requirements for the *contents* of that notice. *See Maccaferri,* 91 F.3d at 1437 (quoting *U.S. for Use and Benefit of Jinks Lumber Co. v. Federal Ins. Co.,* 452 F.2d 485, 488 (5th Cir.1971)). Specifically, the Fifth Circuit has stated that "it is crucial that the notice state a claim directly against the general contractor, that the claim be stated with some specificity of amount due, and that the claim specify the subcontractor allegedly in arrears." *Jinks,* 452 F.2d at 488. Stated differently, "the written notice and accompanying oral statements must inform the general contractor, expressly or impliedly, that the supplier is looking to the general contractor for payment so that 'it plainly appears that the nature and state of the indebtedness was brought home to the general contractor.'" *United States for Use and Benefit of Kinlau Sheet Metal Works v. Great Am. Ins. Co.,* 537 F.2d 222, 223 (5th Cir.1976) (quoting *Houston Fire & Cas. Ins. Co. v. United States for use and Benefit of Trane Co.,* 217 F.2d 727, 730 (5th Cir.1954)).[6] This strictness as to the contents of the notice "is driven by the purpose of the notice

---

5. Section 270b provides, in relevant part, that:

[A]ny person having direct contractual relationship with a subcontractor but no contractual relationship ... with the [general] contractor ... shall have a right of action upon the [general contractor's] payment bond upon giving written notice to said [general] contractor within ninety days from the date on which such person ... supplied the last of the material for which such claim is made, stating with substantial accuracy the amount claimed and the name of the party to whom the material was furnished.

6. Although the formal requirements of the Miller Act have been relaxed, it is apparent that some writing is still required to provide valid notice under the Act. *See United States for the Use of Brothers Builders Supply Company v. Old World Artisans, Inc.,* 702 F.Supp. 1561, 1567 (N.D.Ga. 1988). This writing must, in turn, meet the content requirements set forth above. *Id.*

For example, in *Jinks,* the Fifth Circuit held that, where written letters from the general contractor demonstrated that it had received the information required to be provided by the supplier under the Miller Act, the notice requirement of the Act was satisfied. *Jinks,* 452 F.2d at 487–88. The court reasoned that the notice requirement of the Act was designed "to alert a general contractor that payment will be expected directly from him, rather than from the subcontractor with whom the materialman dealt directly." *Id.* at 487. Based on this standard, the court held that several writings, taken together, had sufficiently informed the general contractor that he would be looked to for payment. *Id.* at 488.

Similarly, in *Houston Fire & Cas. Co. v. United States for the Use and Benefit of Trane Co.,* 217 F.2d 727 (5th Cir.1954), the Fifth Circuit held that "[i]t is not necessary that the writing relied on be signed by the supplier." *Id.* at 730. Rather, the court stated that "it is sufficient that there exists a writing from which, in connection with oral testimony, it plainly appears that the nature and state of the indebtedness was brought home to the general contractor." *Id.; see also Coffee v. United States for Use and Benefit of Gordon,* 157 F.2d 968, 970 (5th Cir.1946); *cf. United States, Etc. v. Great Am. Ins. Co.,* 537 F.2d 222, 223–24 (5th Cir.1976) (holding that the supplier's sending the contractor copies of monthly statements and summary sheets did not satisfy the Miller Act because no demand, oral or written, was made, and the contractor was given no other indication that the supplier was looking to him for payment).

---

prior to October 1, 1981, constitute binding authority in the Eleventh Circuit. *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (*en banc*).

requirement itself, which is to protect the general contractor by fixing a date beyond which, absent notice, it will not be liable for the subcontractor's debts." *Maccaferri*, 91 F.3d at 1437 (citing *Kinlau*, 537 F.2d at 223–24 n. 1).

Plaintiff maintains that June 17, 1996 is the relevant date for purposes of determining whether Plaintiff has met the Miller Act's ninety day notice requirement. (*See* Pl.'s Opp'n at 7–9.) Defendant, however, argues that the relevant date for purposes of measuring the notice requirement is February 8, 1996. (See Defs.' Mot. at 2.) February 8, 1996, is the last date on which materials that have been made a part of Plaintiff's claim in the instant case were delivered.[7] (*Id.*) In contrast, June 17, 1996 is a date[8] on which materials were delivered for the Project, but not necessarily delivered to Aegis and included in Plaintiff's claim. (*See* Pl.'s Opp'n at 7–9.)

As noted above, the Miller Act provides that the ninety day period runs from "the date on which [the claimant] . . . furnished or supplied the last of the material for which such claim is made." 40 U.S.C. § 270b(a). Thus, based on the plain language of the statute, it would appear that Defendants' February 8, 1996 date is the proper date from which to measure the running of the ninety day period, and that Plaintiff, who sent notice on August 29, 1996, should be barred from proceeding under the Miller Act in the absence of a contractual relationship with the general contractor.[9]

Plaintiff, however, contends that an exception to the Miller Act's notice requirement has been recognized where, as here, a general contractor has continued to receive materials from the supplier after the subcontractor has departed from the project. (*See* Pl.'s Opp'n at 8–9.) Under such circumstances, Plaintiff contends, the ninety days runs from the date of the last delivery of materials to be used in the project—in this case, from June 17, 1996. (*Id.*) In support of this assertion, Plaintiff cites a variety of authorities, and argues that "the predominant view of the courts that have been presented with this question is that the § 270b(a) notice period may be extended by the furnishing of materials to a prime contractor after the subcontractor" has departed from the project. (*Id.* at 9.)

Notwithstanding the position that has been taken by other courts on this issue, the law in the Eleventh Circuit is such that Plaintiff's argument fails. In *United States for the Use and Benefit of Harris Paint Co. v. Seaboard Surety Co.*, 437 F.2d 37 (5th Cir.1971), the court observed that the plaintiff's case "stands or falls on one proposition—whether the purchase and use by a contractor of materials from a supplier in the completion of a sub-contractor's job, without more, extends the time for giving the notice . . . until 90 days after the last of such material is furnished to the contractor." *Id.* at 38 (citing with approval the district court's reasoning). Having thus defined the question presented by the case, the court answered in the negative, stating that "no . . . justification exists for treating the case before us as if the subcontractor never left the job." *Id.* at 39. Thus, contrary to Plaintiff's assertions, at least in this circuit, the furnishing of materials to the prime contractor for the completion

---

7. Plaintiff does not appear to dispute that this is the last date for which recovery is claimed under the Miller Act. (*See* Pl.'s Opp'n at 8.)

8. As previously discussed, there is conflicting evidence about the final date on which materials not a subject of the claim were delivered by Plaintiff for the Project, although Plaintiff maintains in its opposition that June 17, 1996 is the final date. (*See* Pl.'s Opp'n at 8.)

9. The Miller Act's ninety day notice requirement only extends to persons "having direct contractual relationship with a subcontractor but no contractual relationship express or implied with the contractor furnishing [the] payment bond." *See* 40 U.S.C. § 270b(a). Plaintiff has asserted this alternate theory of recovery in Count Two of its Complaint, which alleges that Plaintiff is also due payment under the Miller Act because of an implied contractual relationship with North American. (Compl.¶¶ 19–30.)

Thus, if Plaintiff were able to prove the existence of an implied contractual relationship with North American in the instant case, Plaintiff would be able to proceed under the Miller Act even if sufficient ninety day notice were never provided. As Defendants' Motion does not challenge this aspect of the Complaint, however, the court need not presently determine whether there exists sufficient evidence of an implied contract between Plaintiff and North American to support this claim.

of the project, in itself, does not extend the notice period under the Miller Act.[10]

■ Thus, the issue in the instant case becomes whether Plaintiff, having failed to provide timely notice in the precise form prescribed by the Miller Act, has nevertheless provided notice that "expressly or impliedly" informed North American that "[Plaintiff] is looking to [North American] for payment so that 'it plainly appears that the nature and the state of the indebtedness was brought home to [North American].'" *Kinlau*, 537 F.2d at 223; *see also Maccaferri*, 91 F.3d at 1437. Based on the evidence before the court, viewed in a light most favorable to the Plaintiff, the court finds that North American was indeed informed that Plaintiff was looking to it for payment, and that the nature and state of the indebtedness was apparent to North American.

In this case, Plaintiff consistently kept North American informed of the nature and the extent of the indebtedness of Aegis. Plaintiff consistently forwarded copies of invoices and summaries of outstanding charges to North American beginning in approximately April, 1995. (*See* Yates Aff. and exhibits thereto.) Such evidence standing alone, however, has been held not to provide sufficient notice under the Miller Act. *See Kinlau*, 537 F.2d at 224.

Plaintiff also established a joint-checking procedure whereby payments were made in the name of both Plaintiff and Aegis. (*See* Yates Aff. and exhibits thereto.) Again, however, such evidence has been held not to provide sufficient notice under the Miller Act. *See Maccaferri*, 91 F.3d at 1438–39 (citing similar holdings from several courts, and holding that joint check arrangement, either alone or in conjunction with certain other evidence before the court, did not provide adequate notice under the Act).

The facts before the court, however, provide the crucial component that was lacking in cases such as *Maccaferri*, where the Eleventh Circuit stated that "[w]hat is missing here is exactly what § 270b(a) was meant to provide: a clear indication from the materialman that it expects the general contractor to pay the balance due on the subcontractor's debt." 91 F.3d at 1438. Specifically, as indicated by the Yates Affidavit, beginning in 1995, Plaintiff consistently demanded payment of the outstanding amount owed, attempted to make payment arrangements, and was promised payment by North American. (*See* Yates Aff. at 3 and exhibits thereto.) The court finds that this evidence alone would serve to impliedly, if not expressly, put North American on notice that Plaintiff was looking to North American for payment of the outstanding debt owed by Aegis. *See Kinlau*, 537 F.2d at 223. In addition, however, after February 8, 1996, but prior to the expiration of the ninety day notice period provided for by the Miller Act, Plaintiff also sent a letter to North American that stated:

It is very hard to understand why a partial payment cannot currently be issued when there is obviously money still owed even against the original contract amount.

. . .

In closing, I've been given council [sic] on numerous occasions to proceed with litigation against bonding companies per the Miller Act. I have as of this date chosen to try and work this out ourselves however, I cannot continue to allow this to drag on.

(Yates Aff.Ex. A. (March 15, 1996 letter to Russ Becker from Gary Yates).)[11] Such language clearly indicates that Plaintiff was

---

**10.** The court notes that the *Harris Paint* case can be found, among other places, in the American Law Reports annotation cited by the Plaintiff in its opposition. (*See* Pl.'s Opp'n at 9, citing David J. Oliveiri, Annotation, *Timeliness of notice to public works contractor on federal project of indebtedness for labor or materials furnished*, 69 A.L.R.Fed. 600 (1984).) The cases holding the opposite of *Harris Paint* on which Plaintiff relies are found within the same annotation, in the paragraphs immediately preceding the paragraph which discusses *Harris Paint*. (*See id.*) Nevertheless, Plaintiff fails to address the controlling precedent of *Harris Paint* in its opposition. (*See id.* at 7–9.)

**11.** The court finds the reasoning of the Fifth circuit in *Jinks* highly persuasive on this point. In *Jinks*, the court held that a letter sent to a general contractor, in conjunction with an attached copy of a letter that had been sent to the subcontractor, provided proper notice under the Miller Act. *Jinks*, 452 F.2d at 488. The letter expressed plaintiff's "understanding that (the general contractor's) bond would probably make (the general contractor) liable as a surety for [the subcontractor]," while the attached carbon copy of the letter that had been mailed to the subcontractor indicated "the precise amount allegedly due" and requested that the subcontractor "contact the attorneys." *Jinks*, 452 F.2d at 487. Similarly, here, Plaintiff communicated to North

looking to North American for payment of the outstanding debt owed by Aegis. In conjunction with the ongoing dialogue regarding the outstanding debt, payment arrangements, and North American's promises of payment, the court finds that "the nature and state of the indebtedness" was clearly communicated to North American. *See Houston Fire*, 217 F.2d at 730.

Accordingly, the court finds that sufficient evidence exists to support a finding that the requisite ninety day notice was provided by Plaintiff to North American. Thus, Defendants' Motion to Dismiss, construed by the court as a Motion for Summary Judgment, is due to be denied on this point.

## II. PLAINTIFF'S MILLER ACT CLAIM WAS BROUGHT WITHIN THE ONE YEAR PERIOD SPECIFIED IN THE ACT

■ Defendants contend that this action was not brought within the one year period of limitation set forth in the Miller Act. (Defs.' Mot. at 2.) The date from which Defendants contend that the court should measure the period of limitation, however, is February 8, 1996, the final date on which materials made the subject of this claim were supplied. (*Id.*) In support of this proposition, Defendants cite both the Miller Act itself, 40 U.S.C. § 270b, and Fifth Circuit precedent, *General Electric Co. v. Southern Const. Co.*, 383 F.2d 135 (5th Cir.1967). Defendants' contention, however, is supported by neither of these authorities; in fact, these authorities stand for precisely the *opposite* proposition for which they are cited.

The Miller Act provides that an action to recover under its provisions may not be brought "after the expiration of one year after the day on which the last of the ... material was supplied." 40 U.S.C. § 270b(b); *see United States of America f/u/b of Dillon Constr. Co., Inc. v. Continental Ins. Co.*, 776 F.2d 962, 963–64 (11th Cir.1985). Thus, based on the plain language of the statute, the appropriate date from which to measure the one year period is the last day on which material was supplied for the project. *See* 40 U.S.C. § 270b(b).

In fact, the Fifth Circuit, in *General Electric Co. v. Southern Const. Co.*, applied the statute based on its plain meaning and explicitly rejected the trial court's reading and construction of the statute. *General Electric*, 383 F.2d at 138–39. The trial court, resorting to canons of construction in interpreting the Miller Act, had "concluded that the words 'for which claim is made,' should be read into Section 270b(b) to carry out the true congressional intent." *Id.* at 138. This reasoning was rejected by the Fifth Circuit, which held that "this suit, brought within the one year period following the day on which the last material was furnished, was timely filed." *Id.* In *General Electric*, just as in the instant case, the subcontractor had become insolvent before completion of the project. *Id.* at 136. In *General Electric*, however, a new subcontractor was hired after the general contractor had taken over the work for a brief period of time. *Id.* This small factual distinction, however, serves as no basis for distinguishing the holding of *General Electric* from the instant case or reaching the result advanced by Defendants in this case.[12]

---

American the fact that it might proceed against the bond, and the amounts due to Plaintiff had been made clear to North American pursuant to the ongoing discussions between the Parties.

In addition, the court notes that this letter, in conjunction with the ongoing dialogue regarding the precise amount of the outstanding debt, meets the requirements set forth by the plain language of the Miller Act. *See* 40 U.S.C. § 270b(a). Specifically, North American was provided notice that Plaintiff might proceed under the Act, the amount due had been consistently communicated, and the person owing the debt (Aegis) was known to North American. *See id.*

**12.** The Eleventh Circuit has revisited the *General Electric* opinion more recently, stating in *United States for the Use and Benefit of Aetna Drywall Contractors, Inc. v. Aetna Cas. and Sur. Co.*, that:

The statute of limitations issue is the easiest and most straightforward. Aetna Drywall filed this action within one year (the applicable limitations period) of their last furnishing of materials and labor for the project; however, Drywall did not file within one year of the last furnishing of materials or labor at issue in the suit. Relying on *United States for Use and Benefit of McGrath v. Travelers Indemnity Co.*, 253 F.Supp. 330 (D.Ariz.1966), the district court held that Drywall should have filed within one year of the furnishing at issue. The district court erred because *McGrath* is not the law in this circuit. In *General Electric Co. v. Southern Const. Co.*, 383 F.2d 135 (5th Cir. 1967), *cert. denied*, 390 U.S. 955, 88 S.Ct. 1049, 19 L.Ed.2d 1148 (1968), the predecessor to this circuit held that the date of the last

Accordingly, the court finds that Plaintiff's action was commenced within the proper one year time period set forth by the Miller Act.

### ORDER

For the foregoing reasons, it is CONSIDERED and ORDERED that Defendants' Motion to Dismiss, construed by the court as a Motion for Summary Judgment, be and the same is hereby DENIED.

furnishing is the appropriate date whether or not that furnishing is at issue in the suit. *Id.* at 138. The rationale underlying this rule is the prevention of multiple lawsuits between the same parties. Renel and Aetna Casualty offer

this court no logical reason to abandon this rule (even if we had the power to do so). 725 F.2d 650, 650–51 (11th Cir.1984) (footnotes omitted).