**NATIONAL UNION INDEMNITY COMPANY, Appellant,**

v.

**Charles H. SMITH, d/b/a Smith Construction Company, Appellee.**

**No. 23919.**

United States Court of Appeals
Fifth Circuit.

Feb. 9, 1968.

A. Morgan Brian, Jr., New Orleans, La., for appellant.

Cicero C. Sessions, Max Nathan, Jr., New Orleans, La., for appellee.

Before TUTTLE, THORNBERRY and GODBOLD, Circuit Judges.

GODBOLD, Circuit Judge:

The plaintiff was the prime contractor on a United States government contract for work on federal property in the State of Louisiana. He sued to recover from the surety of Mojave, a bankrupt subcontractor, the stipulated amount of $5,382.-

87 which Mojave failed to pay one of its suppliers of equipment for the job. The prime was sued by the supplier, paid off, and brought this suit against the sub's surety for the amount so paid, claiming as obligee on the sub's bond and as subrogee of the supplier. The bond from sub to prime was in conventional form.

After trial without a jury the district court made careful and detailed findings and held the surety liable. The single issue on this appeal by the surety is whether the court erred in finding the surety was not released from its obligation by alleged premature payments made by prime to sub without consent of the surety. The dispute centers around two paragraphs of the contract between prime and sub:

5. On or before the 15th day of each calendar month, or whenever monies is [sic] received from [the Government] for previous monthly estimate, [Smith] shall make partial payments to [Mojave] on the basis of a duly certified approved estimate of work performed during the preceding calendar month by [Mojave], less ten (10%) per cent of the amount of such estimate which is to be retained by [Smith] until all work has been performed strictly in accordance with this agreement and until such work has been accepted by [Smith] and/or [the Government].

6. Final payment on account of this agreement will not be made until the expiration of such with holding [sic] period as may be required by State Statutes to the effect that no labor or material liens have been filed against the work. Where not in derogation of State Statutes, upon submission by [Mojave] of evidence satisfactory to [Smith] that all payrolls, material bills

and other costs incurred by [Mojave] in connection with the construction of the work have been paid in full, such final payment will be made within forty-five (45) days after the completion by [Mojave] of all work covered by this agreement and the acceptance of such work by [Smith].

It is contended that the last three payments on the contract were premature. The first and third of these were of retainage. The second was for extra work and no retainage was withheld thereon; since we conclude that the district court did not err in holding all payments were validly made including the last, which was of all accrued retainage not theretofore paid, we need not discuss the issue of failure to withhold retainage on the next-to-last payment.

■■ The court found that all three of the payments in dispute were made after completion and acceptance of the work to which each related, and that finding is sufficiently supported by the evidence as not to be plainly erroneous. This disposes of all issues relating to alleged prematurity of the first two of the three disputed payments. As to the third, the final payment, the surety asserts that, under para. 6 plus the last clause of para. 5 of the contract, such payment may not be made until expiration of a 45-day time from completion and acceptance of all work, which time is the period allowed by state statutes [1] for filing liens against work. State liens are not involved on this federal job, and the court found that the contract was drafted by a layman using a contractors' association form containing provisions not pertinent to work for the United States. The district court was doubtful, a doubt we share, that para. 6 has any application,[2] in which case the prime, un-

---

1. La.Rev.Stat.Ann. tit. 38, §§ 2242 (Supp. 1966) & 2243 (1950), covering public works. Compare La.Rev.Stat.Ann. tit. 9, §§ 4801 & 4802 (Supp.1966), covering private works.

2. See Ft. Worth Independent School Dist. v. Aetna Cas. & Sur. Co., 48 F.2d 1, 4–5 (5th Cir.), cert. denied 284 U.S. 645, 52 S.Ct. 24, 76 L.Ed. 548 (1931):

"Of course, this being a public building, the article last quoted was in applicable in so far as liens are concerned. * * * As above stated, this being a public building, there was no legal possibility of attaching a lien thereto. The clause was no doubt part of a printed form used in dealing with private persons."

**154**

der the last clause of para. 5, could pay retainage at any time after completion and acceptance; but the court pretermitted a decision of that question because of the second sentence of para. 6. The surety acknowledges that the prime need not wait out the 45-day period if the sub submits evidence satisfactory to the prime that its bills have been paid. The court found this had been done. The surety contends "evidence satisfactory to [Smith]" was, as a matter of law, required to be in the form of affidavits or at least of written certificates. The sub was one of the larger companies in the United States engaged in electrical construction work, doing a multi-million dollar business, and operated on a nationwide basis. There was evidence that in the industry affidavits that bills are paid are not generally requested or used. A vice president of the sub was on the job and served as the sub's purchasing agent. He was in general charge of the sub's numerous and large projects in this area of the United States. Before the last payment was made Smith inquired of him whether all bills had been paid, and he responded that he was informed they had been paid. The vice president thought this was true, and was surprised to learn subsequently that his company was in distress. The trial court found Smith believed and had reasonable cause to believe that the sub had no unpaid bills on this job. The surety's contentions that "evidence satisfactory to Smith" must be written and sworn, or at least written, are supported neither by the contract nor the bond nor evidence of industry practice. In Talbert v. Bounds & Allen, 123 So.2d 815 (La.Ct.App.1960), relied on by the surety, the architect (who by certificate authorized payments to the contractor) sought no evidence that the bills were paid, had actual knowledge that there were substantial unpaid bills, and acknowledged that he required no evidence of payment because he thought the surety bond gave the owner absolute protection. In Ft. Worth Independent School Dist. v. Aetna Cas. & Sur. Co., 48 F.2d 1 (5th Cir. 1931), the architect re-

quired no evidence and the contractor submitted none.

The amount stipulated by the parties as in issue was $5,382.87. By an inadvertent transposition the judgment appealed from was for $5,328.87. The parties have stated to this court that the stipulated figure is correct and request that the judgment, if affirmed, be corrected.

As corrected, judgment for $5,382.87 is Affirmed.