**NATIONAL UNION INDEMNITY COM-PANY, Appellant,**

v.

**R. O. DAVIS, INC., Appellee.**

**R. O. DAVIS, INC. and General Insurance Company of America, Appellants,**

v.

**GENERAL ELECTRIC COMPANY et al., Appellees.**

No. 22121.

United States Court of Appeals Fifth Circuit.

May 6, 1968.

A. Morgan Brian, Jr., New Orleans, La., for appellants.

James H. Drury, Michael Bagot, John B. Hattier, Jesse S. Guillot, New Orleans, La., for appellees.

Before JOHN R. BROWN, Chief Judge, and GEWIN,[*] Circuit Judge.

JOHN R. BROWN, Chief Judge:

This case adds one more pebble to the avalanche of litigation resulting from the financial collapse of Mojave Electric Company in 1960.[1] Contractor[2] sued National,[3] surety for Subcontractor,[4]

for losses sustained when Subcontractor failed to complete work on two contracts. There are three issues presented. The first and main one is whether the Trial Judge erred in refusing to hold that Contractor had made premature or improper payments to Subcontractor under the contract. The remaining subsidiary issues are, second, whether the Trial Judge properly held that Interstate,[5] the Supplier to Subcontractor, is entitled to recover from Contractor and General,[6] its Miller Act surety, amounts due Supplier from Subcontractor, and, third, whether it was proper to deny attorney's fees and other incidental expenses of the litigation to Contractor. As to the first and third issues, we affirm. As to the second, we reverse.

The facts are not unduly complicated. The Federal Government and Contractor entered into contracts for the construction of jet fuel storage and wharf facilities for the Navy. As part of these contracts, Contractor gave the Government the required statutory payment and performance bonds with General, its Miller Act surety.[7] Contractor then executed two contracts with Subcontractor for the electrical work on the jobs. Although not statutorily required to do so, Subcontractor gave Contractor a performance bond with National, the appellant here.[8] The initial amount of these two original contracts was $41,618.69. When Subcontractor defaulted in March, 1960, Contractor in periodic monthly payments had already paid Subcontractor $8,689.06 of the total amount, but Subcontractor left outstanding bills

[*] Circuit Judge Wright, of the District of Columbia Court of Appeals, was designated as a member of the Court, but did not participate in the submission or decision of this case.

1. See, e. g., National Union Indem. Co. v. Smith, 5th Cir., 1968, 389 F.2d 152, [Feb. 9, 1968]; General Elec. Co. v. Southern Constr. Co., 5th Cir., 1967, 383 F. 2d 135; National Union Indem. Co. v. G. E. Bass & Co., 5th Cir., 1966, 369 F.2d 75.

2. R. O. Davis, Inc., the Prime Contractor.

3. National Union Indemnity Company.

4. Mojave Electric Company.

5. Interstate Electric Company.

6. General Insurance Company.

7. These Miller Act bonds inure directly to the benefit of unpaid third-party suppliers, provided, of course, the suppliers comply with the requirements of 40 U.S. C.A. § 270b(a).

8. This bond is strictly a conventional one, not required by the Miller Act, and runs only in favor of R. O. Davis, Inc.

unpaid in the sum of about $8,650.00. A second subcontractor was brought in and completed the job for only $750.00 more than the total cost under the original contract.

Contractor demanded that National, as surety for Subcontractor, satisfy the claims of the unpaid materialmen that were being asserted against Contractor. Contending that it was not required to do so because of premature periodic payments from Contractor to Subcontractor, National asserted that it had been released from liability. Thereafter, the suppliers of Subcontractor brought suit against Contractor under the Miller Act bonds, but Contractor impleaded National, seeking full reimbursement and also asserting the right to recover the completion loss of $750.00, incidental costs of litigation, and attorney's fees. The claims were consolidated and after a trial before the District Judge, he found that the two remaining unpaid suppliers [9] were entitled to recover their claims from Contractor and General, its surety, but that Contractor was entitled to recover from National, Subcontractor's surety, all losses sustained through the claims of the suppliers and by having to relet the contract. Contractor's claim for expenses and attorney's fees were disallowed. From this judgment National appeals and Contractor cross-appeals.

The main thrust of National's appeal is that under the contract between Contractor and Subcontractor premature payments were made by Contractor to Subcontractor. Since this action constituted a material variation from the contract without the consent of the surety, National was thereby released from any liability.

The critical language in the contract stated that Contractor agreed to pay Subcontractor for the work specified in the contract and that "this payment will be on the basis of a monthly amount equal to the value of the materials and labor installed the previous month * * *." The crucial words here are "material and labor installed." National contends that on the basis of job completion records all the credible evidence showed that Contractor made an initial monthly payment to Subcontractor of $3,262.87 when Subcontractor had done nothing more than move materials to the jobsite. On this National urges that the payment was premature because the contract calls for the *installation* of the materials. If, as National asserts, this were indeed the only credible evidence in the record to show exactly what work by the Subcontractor preceded the payment, we may assume, without deciding, that we might be persuaded by the argument. Cf. National Union Indem. Co. v. G. E. Bass & Co., 5 Cir., 1966, 369 F.2d 75.

But the testimony of two witnesses, one an ex-employee of Contractor and one an ex-employee of Subcontractor, must also be considered. Without going too extensively into the testimony of these two witnesses, the gist of it was that the initial payment was made for materials on which labor had been expended for the purpose of incorporating those materials into the job. Further testimony allowed the Judge to conclude that the payments would certainly not have been made by the Contractor unless a significant amount of initial installation had actually been done. On the basis of this testimony, which helps to put the recorded payment on which National bases its defense into proper context, the determination that the material and labor had been installed passes muster under F.R.Civ.P. 52(a). Cf. National Union Indem. Co. v. Smith, 5 Cir., 1968, 389 F.2d 152 [Feb. 9, 1968].

The second issue, pressed jointly by National and Contractor, is that one of Subcontractor's suppliers, Inter-

9. By this time the only two suppliers in the case were General Electric and Interstate Electric. The third supplier, Westinghouse, had obtained a default judgment before the cases were consolidated and that judgment is not involved here.

state, did not comply with the notice requirements of the Miller Act, 40 U.S.C.A. § 270b(a). If this was so then as a matter of law it was unable to recover from Contractor and its Miller Act surety, who in turn demanded and obtained a judgment for reimbursement from National, as the surety of Subcontractor. Although National, half-heartedly supported by the Contractor, makes a very persuasive argument that a claim in proper form was never made,[10] we need not reach this question for whatever its sufficiency in form and content, we must hold that it was not timely.

■■ The only communication from Interstate to Contractor which could possibly be construed as a claim against Contractor to satisfy the Miller Act was a letter of March 18, 1960. The only materials involved here had an invoice date of July 25, but no year was specified. Taking 1959 as the year of delivery, a letter in March of 1960 is not timely since more than 90 days had elapsed since the last material was furnished. Taking 1960 as the proper year of delivery, then the letter of March 18, 1960, becomes premature and would not be a proper claim. Thus we hold that Interstate cannot recover from Contractor and its Miller Act surety since the notice was untimely. From this it follows that Subcontractor's surety, National, is not liable to Contractor for the materials supplied by Interstate to Subcontractor.

■ Contractor has counterclaimed for amounts expended incidental to the litigation here and for attorney's fees. The District Judge denied recovery and we think he was correct in this ruling. Louisiana law, under which the conventional bond must be construed, cf. United States Fid. & Guar. Co. v. Hendry Corp., 5 Cir., 1968, 391 F.2d 13 [Feb. 29, 1968], allows attorney's fees generally only where provided for by statute or by con-

tract. See Hernandez v. Hanson, 1958, 237 La. 389, 111 So.2d 320, on rehearing, 111 So.2d 326; McNeill v. Elchinger, 1957, 231 La. 1090, 93 So.2d 669; Chauvin v. La Hitte, 1956, 229 La. 94, 85 So.2d 437; Brantley v. Tugwell, La., 1953, 223 La. 763, 66 So.2d 800. Attorney's fees here were not provided for by contract nor do they come within any exceptions, statutory or otherwise, that Louisiana has carved in its general rule. As to the incidental expenses of litigation, Article 3040, La.Civ.C., provides only for the recovery of the cost of litigation and this is limited to more direct expenses such as court costs. First Nat'l Bank v. White, La., 1930, 127 So. 433; cf. 20 C.J.S. Costs § 184 (1940) and cases cited therein.

Affirmed in part; reversed in part.

---

10. The Miller Act, 40 U.S.C.A. § 270b(a) requires that a supplier of a subcontractor who intends to bind the Miller Act surety of the contractor must give written notice of the amount claimed to the contractor within ninety days from the date on which the supplier performed the last of the labor or furnished the last of the materials for which the claim is made. Bush v. Maryland Cas. Co., 5 Cir., 1963, 320 F.2d 939; Coffee v. United States, 5 Cir., 1946, 157 F.2d 968.