Revised November 26, 2001

**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

---

**No. 00-60668**

---

**J. D. FIELDS & COMPANY, INC., United States of America**
**for the use of,**

**Plaintiff-Appellant,**

**VERSUS**

**GOTTFRIED CORPORATION, ET AL.,**

**Defendants,**

**GOTTFRIED CORPORATION; CONTINENTAL CASUALTY COMPANY,**

**Defendants-Appellees.**

---

Appeal from the United States District Court
for the Southern District of Mississippi

---

November 6, 2001

Before JONES and DeMOSS, Circuit Judges, and FELDMAN, District Judge.[1]

DeMOSS, Circuit Judge:

Plaintiff-Appellant, J.D. Fields & Company, Inc. (J.D.

---

[1]District Judge for the Eastern District of Louisiana, sitting by designation.

1

Fields), appeals the district court's final judgment following a bench trial dismissing Fields' claims under the Miller Act, 40 U.S.C. §§ 270a-270d, against Defendants-Appellees, The Gottfried Corporation (Gottfried) and Continental Casualty Company (Continental Casualty), because of Fields' failure to give adequate notice within the 90-day period prescribed by section 270b(a). The district court's decision is vacated and remanded for further proceedings.

## I.   BACKGROUND

In 1997, Gottfried, as general contractor, contracted with the United States Government, Department of Veterans Affairs (VA), to perform construction work at the VA Hospital in Biloxi, Mississippi. Continental Casualty supplied a payment bond guaranteeing Gottfried's payment of labor and materials supplied to the job. Cherokee Towing & Construction Co., Inc. (Cherokee) entered into a subcontract with Gottfried wherein it agreed to provide the labor, material, equipment, and supervision required to complete two steel sheet-pile cofferdams on the project in conjunction with the construction of an elevator shaft and stairwell.

Cherokee executed a rental agreement with J.D. Fields for the pilings it used in making the cofferdams, which it began driving on May 19, 1997. The rental agreement required the payment of monthly rental by Cherokee to J.D. Fields. The rental agreement was to

2

terminate when Cherokee notified J.D. Fields that the pilings were ready for inspection and return shipment, after which J.D. Fields would be given the opportunity to inspect the pilings at the job site. Pursuant to the rental agreement, Cherokee was to pay final liquidation and reconditioning charges and pay attorneys' fees in the event of its default.

Brian McHale, Sales Manager for J.D. Fields, testified that Cherokee's rental payments were untimely throughout the rental period immediately prior to halting altogether in October 1997. McHale also testified that in late December 1997, or early January 1998, he called Karl Gottfried, of The Gottfried Corporation, regarding the failure of Cherokee to meet its obligation to pay the rental payments for the months of October, November, and December 1997. McHale further testified during his telephone conversation that he informed Gottfried that his corporation would be responsible for any lien required to secure payment, as well as any attorneys' fees, if the rental payments remained outstanding.

According to McHale, Gottfried told him that he would investigate the matter and get back in touch with McHale. Gottfried's testimony did not conflict with McHale's testimony on this fact. However, the district court found that both documentary evidence and witness testimony revealed that on December 22, 1997, Gottfried required Cherokee to execute a release certifying that all invoices for materials, payrolls, and other obligations incurred by Cherokee in connection with the VA project had been

3

paid in full and that there were no outstanding obligations against Cherokee applicable to the project. Nevertheless, the district court concluded that it was unclear from the testimony whether Gottfried was aware of Cherokee's outstanding obligations at the time it required Cherokee to sign the release.

The district court found that Gottfried issued a check on January 7, 1998, made payable jointly to Cherokee and J.D. Fields for rental payments due in October, November, and December 1997, bringing Cherokee's account current through January 9, 1998. Gottfried testified that at the time the check was issued, Cherokee had completed driving the pilings and he believed the pilings had been returned to J.D. Fields. Gottfried expected that no further rental fees would be owed and was unaware that the pilings had not been returned to J.D. Fields.

The district court noted that there was conflicting testimony regarding when the pilings left the job site. Louis Evans, a truck driver for Cherokee, testified that he observed the pilings in the lay-down yard on the VA premises approximately one month after the pilings were removed from the ground. Notably, Doug Ladner, President of Cherokee, testified that the pilings were stored for at least two weeks, and perhaps until late January or early February, on the VA premises in an area where daily logs and reports were not required. Jane Page, a Cherokee employee, testified that the pilings remained in the "lay down" area for about one week after they were removed from the ground. George

4

Malcolm Brooks, Jr., Project Supervisor for Gottfried, testified that the pilings were removed and taken from the site on December 18, 1997, and that he did not see them on the "lay down" site after that date. James Levens, President of Levins Builders, Inc., another subcontractor, stated that his firm began constructing stairs for the VA project on December 19, 1997, and that the pilings would have had to have been removed from the site by that date in order for his company to begin work. Levin also testified that he never saw the pilings at the lay-down yard. David Boggs, Project Manager for the VA, recalled that the pilings remained for a few days near the loading dock after being removed from the ground, but he did not recall seeing them in the "lay down" yard. On redirect, Boggs testified that the pilings may have remained on site for two to three days after having been removed from the ground.

In view of the conflicting testimony, the district court concluded that the written records before it were the most reliable evidence. Those documents included Cherokee's Daily Manpower Reports and Gottfried's Daily Logs. The court noted that the Daily Logs showed that as of December 15, 1997, Cherokee had "finished pulling piling." On December 17, Cherokee was "hauling sheet piling from job site." On December 18, Cherokee had "finished removing piling." The court found that there was no further mention of the pilings and no Daily Log was admitted into evidence on or after December 19. Although there was a Daily Manpower

5

Report completed by Cherokee on December 19, indicating its presence on the site, there was no description of the work completed for the day. As a result, the court concluded that the last day the pilings were supplied to the job site was December 18, 1997. Based on this factual finding, the court found that the statutory period for notice under the Miller Act began to run on December 19, 1997, and expired 90 days later on March 18, 1998.

There is no dispute that the material rented by Cherokee was returned to J.D. Fields on February 27, 1998. On March 2, 10, and 12, J.D. Fields sent letters to Cherokee regarding the charges for reconditioning and liquidation of the pilings used in the VA project. The letters do not indicate that they were copied to Gottfried; however, Gottfried does not deny that it received copies. On March 20, 1998, J.D. Fields mailed written notice to Cherokee and Gottfried of its Miller Act claim. The notice was not received by Gottfried until March 23, 1998.

The court found that prior to the notice of claim mailed on March 20, 1998, and received on March 23, 1998, Gottfried received no notice of a demand upon it for payment of Cherokee's account. The court found that the correspondence of March 2, 10, and 12, 1997, was inadequate as notice under the Miller Act. The court also found that demands for rental payments due for the months of October, November, and December 1997, could not be construed as notice of demand for the January and February rental amounts and the reconditioning and liquidation charges that Cherokee owed J.D.

6

Fields.  Based on the lack of an adequate and timely notice of claim, the district court entered final judgment dismissing J.D. Fields' claims against Gottfried and Continental Casualty.

## II.  STANDARD OF REVIEW

This court reviews the district court's conclusions of law *de novo*.  **Reich v. Lancaster**, 55 F.3d 1034, 1045 (5th Cir. 1995).  The factual components of the district court's determination are reviewed for clear error.  **Id.**  The district court's findings will be considered clearly erroneous only if we have a "definite and firm conviction that a mistake has been committed."  **B.H. Bunn Co. v. AAA Replacement Parts Co.**, 451 F.2d 1254, 1260 (5th Cir. 1971).

## III.  DISCUSSION

The Miller Act requires general contractors on most federal construction projects to furnish a bond for performance and to secure payment to all suppliers of labor and materials.  40 U.S.C. § 270a(a)(2).  The Act also provides that suppliers of materials to subcontractors on federal construction projects may recover from the general contractor's payment bond any unpaid amount due from the subcontractor.  40 U.S.C. § 270b(a).  To establish a right of action against the general contractor's payment bond, the supplier must give the contractor sufficient written notice "within ninety days from the date on which such person did or performed the last of the labor or furnished or supplied the last of the material for which such claim is made."  **Id.**  A notice to the general contractor

7

will be sufficient only if "it plainly appears that the nature and state of the indebtedness was brought home to the general contractor." *Houston Fire & Cas. Ins. Co. v. United States ex rel. Trane Co.*, 217 F.2d 727, 730 (5th Cir. 1954). The required 90-day notice is designed to protect the general contractor by fixing a date beyond which it will not be held liable for subcontractors' debts, absent proper notification from the supplier. *United States ex rel. Kinlau Sheet Metal Works v. Great Am. Ins. Co.*, 537 F.2d 222, 223-24 n.1 (5th Cir. 1976) (citing *Nolan Co. v. Allied Contractors, Inc.*, 273 F.2d 917, 920-21 (4th Cir. 1959)). Notably, the Miller Act is highly remedial in nature and is entitled to a liberal construction and application in order to effectuate the Congressional intent to protect those who furnish labor or materials for public works. *Glassell-Taylor Co. v. Magnolia Petrolium Co.*, 153 F.2d 527, 529-30 (5th Cir. 1946).

The issue before this court is whether the last day on which J.D. Fields "furnished or supplied" the pilings to Cherokee was when Cherokee returned them, or when they were removed from the site of the VA construction project. Resolving this issue will allow us to determine the starting date of the required 90-day period for notice under to the Miller Act. The district court determined that the last day the pilings were supplied to the job site was December 18, 1997. The court reached this conclusion primarily based on Gottfried's Daily Logs, which indicated that the

8

pilings were no longer being used by Cherokee and that they had been removed from the premises of the VA construction project by that date. As a result, the court concluded that the statutory period for notice under the Miller Act began to run on December 19, 1997, and expired on March 18, 1998.

We disagree with the district court's conclusion. The rental agreement entered into by J.D. Fields and Cherokee, called for the rental period to end "on the date that written notice is received by FIELDS stating that piling is ready for inspection and return shipment as and when directed by FIELDS." Significantly, the record shows that the first notice J.D. Fields received regarding the fact that the pilings were no longer in use or on the premises of the construction project was on February 27, 1998, when the pilings were returned. Before that date, J.D. Fields would have had no way of knowing when the 90-day period for giving notice would begin to run. Therefore, we conclude that the pilings were still being made available, that is "furnished or supplied," to Cherokee until February 27, 1998, when they were returned. This was the date that the rental period ended according to the rental agreement. Until that date, the pilings were still in Cherokee's possession and, therefore, still available to Cherokee for use on the job if necessary.

Our conclusion is not novel. Other courts have reached the same conclusion. *See, e.g.,* ***Interform Co. v. Mitchell***, 575 F.2d

1270, 1280 (9th Cir. 1978) (holding that "a furnisher of rental equipment continues to 'supply' such equipment through the entire rental period; the date of last supply occurs not at the beginning of a job but at the end or at the time the equipment is last available for use on the job"); *United States ex rel. Carter-Schneider-Nelson, Inc. v. Campbell*, 293 F.2d 816, 820 (9th Cir. 1961) (same); *United States ex rel. Malpass Constr. Co. v. Scotland Concrete Co.*, 294 F. Supp. 1299, 1302 (E.D.N.C. 1968) (same); *United States v. Continental Cas. Co.*, 230 F. Supp. 557, 559-60 (W.D. Pa. 1964) (same). Furthermore, a previous Miller Act decision of this court, *Mike Bradford & Co. v. F.A. Chastain Constr., Inc.*, 387 F.2d 942 (5th Cir. 1968), lends considerable support to our decision in the instant case.

In *Mike Bradford*, this court was faced with the issue of whether a Miller Act suit was commenced after the expiration of one year from the last work performed under the contract, and hence outside the Miller Act's statute of limitations. The governing statute provided, as it does today, that "no such suit shall be commenced after the expiration of one year after the day on which the last of the labor was performed or material was supplied." 40 U.S.C. § 270b(b). This language is substantially similar to the provision at issue in the instant case, which requires notice of claim "within ninety days from the date on which such person did or performed the last of the labor or furnished or supplied the last

10

of the material for which such claim is made."  40 U.S.C. § 270b(a).

The plaintiff in **Mike Bradford** agreed to furnish machinery and equipment, along with operators, to the defendant.  387 F.2d at 942-43.  No operators for the equipment were furnished after September 1, 1963, but the equipment was utilized by the defendant until October 4, 1963.  *Id*. at 943.  The equipment may have been idle in the interim.  *Id.* at 944.  Suit was filed on September 21, 1964, and the defendant averred that it was untimely.  *Id.* at 943-44.  This court disagreed, holding that under the plain meaning of 40 U.S.C. § 270b(b), the one-year period begins to run on the day when the labor ceases or when the last material was supplied.  *Id.* at 944.  The court stated that it was "undisputed that the last material was supplied as of October 4, 1963," which was the date the equipment was returned.  *Id.* at 944.  Thus, the court held the action was timely filed.  *Id.*

Thus, the last day on which J.D. Fields "furnished or supplied" the pilings to Cherokee was the date on which they were returned, which was February 27, 1998.  As a result, the 90-day period for giving proper notice in the instant case began to run on February 28, 1998, and expired on May 28, 1998.  Any notice given by J.D. Fields to Gottfried before that date would have been premature and, therefore, insufficient.  *See* **Kinlau Sheet Metal**, 537 F.2d at 224 (holding that monthly statements and summary sheets

11

delivered by the supplier to the prime contractor's agent showing for each job the amount that the subcontractor owed the supplier, the amount paid to that date, and the balance due, were premature and could not be considered as sufficient notice for that job); ***National Union Indem. Co. v. R.O. Davis, Inc.,*** 393 F.2d 897, 900 (5th Cir. 1968) (stating that premature notification of a claim under the Miller Act could not be a proper notice).

## CONCLUSION

We hold that the last day on which J.D. Fields "furnished or supplied" the pilings to Cherokee was February 27, 1998. Thus, the 90-day period for giving proper notice under the Miller Act, 40 U.S.C. § 270b(a), began to run on February 28, 1998, and expired on May 28, 1998. We vacate the district court's decision and remand for further proceedings consistent with this opinion.