**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 01-30979

NOEL ROBINSON,

Plaintiff-Appellee,

versus

WOOD RESOURCES CORP.,

Defendant-Appellant.

Appeal from the United States District Court
for the Eastern District of Louisiana
99-CV-2780-J
June 17, 2002

Before STEWART and CLEMENT, Circuit Judges.[*]

CARL E. STEWART, Circuit Judge:[**]

Noel Robinson ("Robinson") brought this admiralty suit against Wood Resources Corporation

("Wood") under general maritime law and the Jones Act for injuries that he sustained while employed

by Wood. Wood brings an interlocutory appeal solely from the judgment of the district court in favor

---

[*] Judge Politz was a member of the panel that heard oral arguments. However, due to his death on May 25, 2002, he did not participate in this decision. This case is being decided by a quorum pursuant to 28 U.S.C. § 46(d) (1996).

[**] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

of Robinson on his claim for cure in the form of payment for costs associated with Robinson's second surgery. For the reasons set forth below, we affirm.

FACTUAL AND PROCEDURAL HISTORY

Robinson worked for Wood as a deckhand aboard a tug boat. On June 30, 1999, while jumping from a pontoon to the tug boat, Robinson injured his right foot. On December 4, 2000, Robinson received fusion surgery to correct his foot injury.[1] Dr. Dehne, the treating orthopaedic surgeon, testified that he ordered Robinson to use crutches and to not bear weight on his right foot for six to eight weeks from the December 4th surgery.[2] Robinson saw Dr. Dehne on January 18, 2001, approximately six weeks post-surgery, and, according to Dr. Dehne's testimony and his medical records, Robinson had been fully compliant with Dr. Dehne's instructions not to bear weight on his right foot. Dr. Dehne removed Robinson's cast and placed his foot in a CAM walker (a walking boot), but told him to stay on crutches. Dr. Dehne testified that he asked Robinson to return one month from January 18th and ordered "strict non-weight bearing for another month."

Robinson's next scheduled appointment was at the end of February or the beginning of March, but he testified that he rescheduled the visit due to car trouble. Robinson admitted that in March, after he missed the scheduled appointment, but prior to the rescheduled appointment, he began to do some gradual weight bearing. When Robinson returned to see Dr. Dehne on March 27, 2001, he went without his crutches. According to Dr. Dehne's testimony and records, Robinson informed Dr. Dehne that he had been weight bearing; physical examination showed swelling; radiographic evidence

---

[1]The fusion surgery entailed fusing Robinson's bones together by placing screws into the bones of the mid-foot to stimulate healing.

[2]Dr. Dehne's deposition testimony was submitted as an exhibit at trial.

revealed two broken screws, resorption of the fusion sites, and some loss of correction; and Dr. Dehne felt that a repeat operation may be necessary. Hoping to eliminate the need for a repeat surgery, Dr. Dehne again ordered Robinson to not weight bear, to use his crutches, and to return in one month for reassessment. Dr. Dehne testified that when Robinson returned on April 24, 2001, he had been "noncompliant" and there was not any healing or further damage to his foot. In his records, Dr. Dehne wrote the following: "He has not been compliant even still, but has still got some significant swelling. No further subsidence or breakage of screws. Still, the two screws evidence from the previous examination." Dr. Dehne testified that when he evaluated Robinson again on July 10, 2001, there was no more healing and he determined that a second fusion surgery was necessary.

When Wood refused to pay for the second surgery, Robinson sought recovery pursuant to Wood's obligation to cure. The parties agreed to sever Robinson's cure claim and the matter went to trial before the court on July 26, 2001. Robinson testified on direct examination that he came to the March 27th appointment without his crutches because "prior to that time, it was January 19th at the doctor's visit, the next scheduled appointment we was going to try some weight bearing and try to see how my foot would react to that, and when I missed that appointment, I was sort of anxious to go ahead and do it, so I kind of went in without my crutches and that was it." Robinson went on to testify that as of January 18th, it was his understanding that he had another four weeks of non-weight bearing and that he waited about four weeks before he started to weight bear.

Moreover, on cross examination, Robinson testified that on January 18th, Dr. Dehne told him "no weight bearing" and "that we're going to keep you in the CAM walker, stay on the crutches and on your next doctor's visit, with your next scheduled appointment, we're going to see about some weight bearing and see the extent of your foot, and see . . . how much strain it could take or

3

whatever." The following exchange also occurred between Robinson and Wood's attorney:

Q.     My question is, from on January the 18th, when he put you in the CAM walker, until the next time you met with Dr. Dehne, you did not follow his instructions with respect to no weight bearing, isn't that correct?
A.     Correct.
Q.     And that's a decision that you did on your own, correct?
A.     Correct.

On redirect, Robinson testified that before he had surgery on December 4th, it was his understanding that he would not be allowed to weight bear for a couple of months after surgery, and that he did not weight bear during the first two months after surgery. Robinson explained, "I didn't weight bear at all until the scheduled months, the beginning of the March visit, and it was like after that I just started slowly weight bearing on it." Specifically, Robinson testified that he did not weight bear in February of 2001 and that he waited until March because "I was under the understanding when I come back to the scheduled visit that it would be–weight bearing would be applied on my foot and that's when I was to start." Further, Robinson testified as to the scope of his weight bearing: "[I]t was pretty much really like walking back and forth to the bathroom. Walking back and forth from throughout the house . . . . [I]t wasn't on a consistent basis as a normal person would get up and walk around, but I was walking without the crutches but I was always on my CAM walker."

Dr. Dehne testified that he stressed to Robinson the importance of staying off of his right foot, but that he believed they "had a breakdown in communications." Dr. Dehne further testified that while Robinson's noncompliance led to his foot not healing after the first surgery, Dr. Dehne carried, by his own calculation, ten percent of the blame. Dr. Dehne qualified this testimony by adding that he could take a higher percentage of the responsibility considering "the communication aspects" and "not making sure he came back sooner" and that he felt "very responsible" for the poor results. He

4

went on to testify that he had "to take some responsibility for this thing not healing, as well" and that he would "keep a closer eye" on Robinson following the second surgery.

Following the bench trial, the district court entered an order on July 30, 2001 directing Wood to provide additional cure to Robinson for the recommended second surgery.[3] Per Wood's request, this order was granted as a final judgment under Federal Rule of Civil Procedure 54(b). Wood timely appealed this judgment.

DISCUSSION

We review the district court's conclusions of law *de novo*. J.D. Fields & Co., Inc. v. Gottfried Corp., 272 F.3d 692, 696 (5th Cir. 2001). The district court's findings of fact are reviewed under a clearly erroneous standard, which allows reversal "only if we have a definite and firm conviction that a mistake has been committed." Id. (citation and internal quotations omitted). "Determination of maintenance and cure is a factual issue, and therefore is reviewed for clear error." Boudreaux v. United States, 280 F.3d 461, 468 (5th Cir. 2002).

"Maintenance and cure is an obligation imposed upon a shipowner to provide for a seaman who becomes ill or injured during his service to the ship." Id. The duty to provide "cure" encompasses the obligation to reimburse medical expenses and to ensure proper treatment and care. Id. The shipowner's obligation is not affected by the negligence of the injured seaman. Id.; see also Aguilar v. Standard Oil Co., 318 U.S. 724, 730-31 (1943) ("So broad is the shipowner's obligation that negligence or acts short of culpable misconduct on the seaman's part will not relieve him of the responsibility."). "[A]mbiguities or doubts in the application of the law of maintenance and cure are resolved in favor of the seaman." Liner v. J.B. Talley & Co., Inc., 618 F.2d 327, 332 (5th Cir. 1980)

_____

[3]Robinson underwent the second surgery at his own expense on July 30, 2001.

5

(citation and internal quotations omitted).

The maintenance and cure obligation is "held forfeit only under certain well-defined and narrowly limited circumstances." Oswalt v. Williamson Towing Co., Inc., 488 F.2d 51, 53 (5th Cir. 1974). One such circumstance is when the injury "is caused solely by the wilful misconduct of the seaman." Silmon v. Can Do II, Inc., 89 F.3d 240, 243 (5th Cir. 1996); see also Warren v. United States, 340 U.S. 523, 528 (1951) ("The question is whether the injury was due to the wilful act, default or misbehavior of petitioner . . . . The standard prescribed is not negligence but wilful misbehaviour. . . . [W]hile fault of the seaman will forfeit the right to maintenance and cure, it must be some positively vicious conduct–such as gross negligence or willful disobedience of orders." (citations and internal quotations omitted)); Aguilar, 318 U.S. at 731 ("Only some wilful misbehavior or deliberate act of indiscretion suffices to deprive the seaman of his protection. The traditional instances are venereal disease and injuries received as a result of intoxication, though on occasion, the latter has been qualified in recognition of the classic predisposition of sailors ashore." (citations and footnotes omitted)). A seaman's right to maintenance and cure is also "forfeited by a willful rejection of the recommended medical aid." Coulter v. Ingram Pipeline, Inc., 511 F.2d 735, 737 (5th Cir. 1975).

Wood contends that the district court erred in awarding Robinson cure for the second foot surgery because Robinson's failure to follow Dr. Dehne's recommended treatment forfeited his right to cure under each of the following theories: willful misconduct, willful refusal of medical treatment, and failure to mitigate damages. At the cure trial, the sole question considered by the district court was, "to what extent the plaintiff's not following the doctor's instructions regarding weight bearing activities post surgery would constitute such conduct which would relieve the employer of its

6

obligation to provide maintenance and cure." Although this case involved cure for additional treatment, as opposed to the initial injury, the court concluded that the defense of willful misconduct was still applicable. Further, the court recognized that a seaman's willful misconduct "in failing or refusing to follow his treating physician's orders or recommendations may be a defense to additional maintenance and cure." However, the court concluded that, considering the testimony of Dr. Dehne and Robinson, there was a "lack of communication" between Dr. Dehne and Robinson. The court made the following factual findings regarding Robinson's conduct:

> I think this can be looked at two ways. In one sense, I feel that from the doctor's prospective [sic] what he undoubtedly meant was for Mr. Robinson to stay off his foot . . . until he came back again in approximately one month after [January 18th] and that at that time he would look at him again and probably let him start doing some weight bearing on the foot. However, from a lay person's prospective [sic], such as Mr. Robinson's, I don't think it's unreasonable that he interpreted or understood the instructions from the doctor to essentially be that, after [January 18th] he should stay off his foot or do no weight bearing for another month or so, another four weeks, which I have no evidence that he did not do that.
>
> The only evidence I have is that he admits that he started weight bearing around the 1st of March right after the time that he could not keep his next scheduled appointment with the doctor. So although I think he now realizes, as he's candidly admitted that he didn't explicitly follow the doctor's advice, I just find he was not in bad faith. I think he was acting under his understanding, although it likely was a misunderstanding, but it was his honest understanding that he wasn't doing anything wrong or disobeying the doctor's orders intentionally or wilfully by starting the weight bearing at the time he did.
>
> . . . So for those reasons, I don't find that the facts or the evidence justify a finding of wilful misconduct or wilful misbehavior. It could even perhaps be argued that Mr. Robinson was negligent perhaps in doing what he did, but even if there was a finding of negligence that would not relieve the defendant of its obligation to provide cure . . . .

Accordingly, the court rendered judgment in favor of Robinson.

First, Wood argues that the district court's finding that Robinson's failure to follow Dr.

7

Dehne's orders did not constitute willful misconduct was clearly erroneous.[4] Specifically, Wood challenges the court's finding that Robinson was of the understanding that after the January 18th visit he could begin to bear weight on his foot in four weeks. Wood contends that Robinson's testimony reveals that he understood that he was not to bear weight on his foot until he returned to Dr. Dehne for evaluation and that, despite his correct understanding of Dr. Dehne's orders, he chose to be noncompliant. Wood also asserts that Robinson's continued noncompliance, even after the March 27th visit, is further support that Robinson chose not to follow Dr. Dehne's orders.

There is ample evidence in the record on which the district court could base its finding that Robinson did not willfully engage in misconduct contrary to Dr. Dehne's orders, and we conclude that this finding was not clearly erroneous. Robinson testified that as of January 18th, it was his understanding that he was not to bear weight on his foot for another four weeks and that he waited that long before starting to bear weight. He further testified that prior to the December 4th surgery, it was his understanding that he would not be allowed to bear weight on his foot for a couple of months and that he did not bear weight until the scheduled month of March. The district court heard Robinson's testimony and was in the best position to weigh his credibility and determine whether Robinson was acting under an honest misunderstanding of Dr. Dehne's orders. In addition to

---

[4]Wood also asserts that the district court erred by failing to apply the proper standard for willful misconduct. In reviewing the law of maintenance and cure, the court noted that "negligence of the seaman, even what might in some cases be called gross negligence, if it's short of wilful misconduct, would not be sufficient to defeat the right to maintenance and cure." Wood argues that this statement was improper because the Supreme Court stated in Warren that a seaman's "positively vicious conduct–such as gross negligence" will forfeit the right to maintenance and cure. 340 U.S. at 528 (internal quotations omitted). Further, Wood claims that Robinson's behavior was willful misconduct because it constituted gross negligence. Because Wood raised this contention for the first time at oral argument, it is waived. See Am. Nat'l Gen. Ins. Co. v. Ryan, 274 F.3d 319, 325 n.3 (5th Cir. 2001).

8

Robinson's testimony, Dr. Dehne confirmed that he initially ordered Robinson to not bear weight on his right foot for six to eight weeks following surgery and that on January 18th he ordered Robinson to not bear weight on his foot for another month. Dr. Dehne also testified that there was a "breakdown in communications" and that he felt "very responsible" for the failure of the surgery. Although Dr. Dehne's testimony and records indicate that Robinson continued to be "noncompliant" following the March 27th visit, the meaning of "noncompliant" is not self-evident and there is no evidence as to the nature of Robinson's noncompliance. Even assuming that Robinson failed to use his crutches after March 27th, in contravention of Dr. Dehne's orders, Dr. Dehne testified that there was no further damage to Robinson's foot following the March 27th visit. Thus, any post-March 27th noncompliance is irrelevant to Wood's willful misconduct defense because it did not cause the damage that necessitated the second surgery.

Second, Wood argues that the district court erred as a matter of law by failing to apply the principle of willful refusal of medical treatment to find that Robinson forfeited his right to cure.[5] We disagree. In Coulter, this Court recognized that as a general rule a seaman's right to maintenance and

---

[5] Robinson contends that Wood raised its willful refusal of medical treatment argument for the first time on appeal. "A part y has presented an issue in the trial court if that party has raised it in either the pleadings or the pretrial order, or if the parties have tried the issue by consent under Federal Rule of Civil Procedure 15(b). An issue must be presented so as to put the opposing party and the court on notice that it is being raised." Mongrue v. Monsanto Co., 249 F.3d 422, 427 (5th Cir. 2001) (internal citations and footnote omitted). According to the pretrial order, the parties contested "[w]hether plaintiff's violation of Dr. Denhy's [sic] post-surgery restrictions caused the fusion in plaintiff's foot, performed by Dr. Denhy [sic] on December 4, 2000 to fail, such that any additional medical and anatomical impairment was solely the result of plaintiff's own actions." Robinson's pretrial memorandum for the cure trial recognizes Wood's argument "that it should not have to pay for the second surgery under its cure obligation because of Mr. Robinson's alleged non-compliance with Dr. Dehne's orders on non-weight bearing." At the cure trial, the district court raised the issue of willful refusal of medical treatment itself. We conclude that the pretrial order put Robinson and the district court on notice of the defense of forfeiture of cure, which includes willful refusal of medical treatment. Thus, Wood has not waived this argument.

9

cure is forfeited by a willful rejection of the recommended medical aid. 511 F.2d at 737. We stated, however, that there are "extenuating circumstances" which may make the "failure to follow the prescribed regimen either reasonable or something less than a willful rejection" which precludes recovery. Id. at 738. We remanded the case to the district court to determine whether the injured seaman, who was an extremely obese man, "knowingly and without justification" rejected the prescribed program of diet and exercise without medical supervision and guidance. Id. at 739.

In this case, the district court recognized the defense of willful refusal of medical treatment, stating that "plaintiffs recalcitrant or willful misconduct in failing or behavior in failing or refusing to follow his treating physician's orders or recommendations may be a defense to additional maintenance and cure." The court then considered, albeit under its analysis of forfeiture by willful misconduct, whether Robinson forfeited his right to cure by his willful refusal of medical treatment. Thus, the district court correctly observed that Robinson's willful misconduct in refusing to follow Dr. Dehne's orders may be a defense to additional cure, but determined that Wood was not relieved of its cure obligation because Robinson's conduct was based on his reasonable understanding of the orders to be that he was not to bear weight on his foot for four weeks following the January 18th visit. Our previous conclusion that the district court did not commit clear error in finding that Robinson's refusal to follow Dr. Dehne's orders was not intentional or willful counters Wood's claim that Robinson's right to cure should have been forfeited due to his willful refusal of medical treatment.

Third, Wood argues that the district court erred as a matter of law by failing to apply the principle of failure to mitigate damages as a bar to Robinson's cure claim for the costs of the second surgery. The parties dispute whether or not the mitigation of damages defense was waived. Assuming arguendo that this defense was not waived, we are persuaded that Wood's mitigation of

damages defense is essentially a recapitulation of its primary merits argument that Robinson intentionally failed to follow Dr. Dehne's medical advice.  To demonstrate a failure to mitigate, Wood must show that Robinson's post-accident conduct was unreasonable and that the unreasonable conduct aggravated the injury.  See Marathon Pipeline Co. v. M/V SEA LEVEL II, 806 F.2d 585, 592 (5th Cir. 1987). We conclude that Wood has not shown that Robinson has failed to mitigate his damages.  Our affirmance of the district court's factual findings negates the argument that Robinson acted unreasonably.

CONCLUSION

For the foregoing reasons, we affirm the district court's judgment ordering Wood to provide additional cure.

AFFIRMED.