IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

———————

No. 01-60944
Summary Calendar

———————

CAROLYNN W. PRATOR,

Plaintiff-Appellant,

versus

PAW PAW'S CAMPER CITY, INC.,
COACHMEN INDUSTRIES, INC., AND
DEUTSCHE FINANCIAL SERVICES
CORPORATION,

Defendants-Appellees.

———————

Appeal from the United States District Court
for the Southern District of Mississippi
(1:00-CV-91-GR)

———————

August 23, 2002

Before GARWOOD, DeMOSS, and DENNIS,  Circuit Judges.

PER CURIAM:[*]

In this bench tried case, Carolynn W. Prator appeals from the district court's order granting

judgment in favor of Paw Paw's Camper City, Coachmen Industries Inc. and Deut sche Financial

Services on her claims for violations of Mississippi law and the Magnuson-Moss Warranty Act,

[*]Pursuant to 5TH CIR. R.47.5 the Court h as determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

arising from alleged defects in a recreational vehicle she purchased. Because we find no clear error in the district court's findings of fact, we affirm.

**Background**

In 1999, Carolynn W. Prator ("Prator") and her then-boyfriend, now-husband Robert Cook ("Cook"), became interested in purchasing a recreational vehicle ("RV") that would be capable of supporting overnight camping without the added amenities of an RV park. After researching RVs, they decided to buy the 1999 Coachmen Starflyte built by Coachmen Industries, Inc. ("Coachmen") using a Ford chassis and a generator made by Onan.[1] Prator went to Paw Paw's Camper City ("Paw Paw's") in nearby Picayune, Mississippi on March 20, 1999 and completed the purchase paperwork, which included the credit arrangement with Deutsche Financial Services Corporation ("Deutsche"). Prator had to place an order for the vehicle as Paw Paw's had no Starflytes in stock.

Prator and Cook returned to Paw Paw's on March 26, 1999 to pick up the RV. They inspected the vehicle but chose not to test drive it, then Prator signed a Coachmen warranty card affirming that she had the chance to test drive and inspect the vehicle and was completely satisfied with its condition. Before Prator and Cook left, employees of Paw Paw's hurriedly demonstrated the proper operation of the RV's systems, including the generator and air conditioner. Cook received a package containing the instruction manuals. On the trip home, Cook noticed that the vehicle pulled to the left during braking. Notwithstanding this concern, Cook soon drove the RV on a trip to Point Clear, Alabama with one of Prator's children as a passenger, while Prator followed in her car. During their first attempt to camp in the RV, Cook adjusted the thermostat to turn on the air conditioner

---

[1] Coachmen, Ford and Onan each offer a limited warranty on their portion of the completed RV. Those written limited warranties are not at issue in this case, nor are Ford and Onan named as defendants.

2

after it had turned itself off, causing the generator to fail. Prator took the RV to Paw Paw's on May 25, 1999 to have them address the brake and generator issues and some minor defects. Paw Paw's was unable to duplicate either of the two main problems, though it apparently completed the other repairs on June 11, 1999. Paw Paw's did not contact Prator or Cook to let them know the RV was ready, and numerous phone calls to the service department were unavailing.

Prator and Cook went to Paw Paw's on Sunday, July 18, 1999 hoping to pick up their RV. Paw Paw's was closed, but Cook was able to check the RV and discovered that the brake and generator issues remained. The next day, Prator called Paw Paw's and demanded a refund or a new RV. Don Winchester, the service manager, rechecked the vehicle but was unable to duplicate the alleged defective behavior. Nevertheless, Winchester spoke with the generator manufacturer, who suggested replacing the carburetor and adjusting the valves as a possible solution to the problem. These repairs were completed on July 23rd, at which point the generator still operated as designed. Winchester then tested the brakes again and this time detected a slight pull to the left. Because Paw Paw's was not authorized to perform chassis work, Winchester sent the vehicle to a Ford dealership for brake work on July 27th and then to a tire company for an alignment. The vehicle was not returned to Paw Paw's until September 7th. Prator did not examine the vehicle; instead, she refused to take delivery and filed suit in Mississippi state court against Paw Paw's and Coachmen alleging breach of express and implied warranties under Mississippi law.

After Prator amended her suit to include claims pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.* and to add Deutsche as a defendant, Paw Paw's removed the case to the United States District Court for the Southern District of Mississippi. The case was heard at a bench trial on June 11, 2001. In addition to the testimony of Prator, Cook and Winchester, the court

3

heard expert testimony from Dirk Smith, Ph.D., an expert in the area of mechanical engineering. Dr. Smith testified that he found no problem with the generator when he examined it on October 2, 2000. He attributed Cook's problem with the generator to operator error, because the manuals clearly state that the air conditioner cannot be turned back on by adjusting the thermostat until the pressure in the system has had time to readjust. Smith pointed out that although Cook testified to proper operation of the generator at trial, Cook's deposition testimony suggested he violated the repressurization warning in the manual.

The district court entered its bench opinion and final order on August 14, 2001. The court noted that none of the defendants had made an express warranty regarding the generator or chassis, thus limiting the effect of the Magnuson-Moss Warranty Act. The court then rejected Prator's claim under the implied warranty of fitness for a particular purpose, MISS. CODE ANN. § 75-2-315, because she failed to show that she had relied on the skill or judgment of the defendants in making her decision to purchase. The district court also rejected Prator's claims under MISS. CODE ANN. § 75-2-314 and § 75-2-608 because both require the existence of a defect, and Prator had not shown that the vehicle was defective. In reaching this conclusion, the court rejected Cook's testimony because he reviewed the operation manual the morning of trial, he testified that he had no specific recollection of reading the generator manual at the time of the alleged defect, and Paw Paw's and Dr. Smith were unable to replicate the problem of which he complained. The district court next found that any pull in the braking system did not render the vehicle unfit for its intended purpose or substantially impair its value to Prator, citing the fact that Prator did not hesitate to take the RV on a trip after this alleged defect was discovered. The court thus found in favor of the defendants. The present appeal followed.

4

**Discussion**

## I. Standard of Review

This court reviews the trial court's findings of fact for clear error, and will only reverse the trial court if we have a "definite and firm conviction that a mistake has been committed." *J.D. Fields & Co., Inc. v. Gottfried Corp.*, 272 F.3d 692, 696 (5th Cir. 2002), *quoting B.H. Bunn Co. v. AAA Replacement Parts Co.*, 451 F.2d 1254, 1260 (5th Cir. 1971).

## II. Revocation of Acceptance

The appellant first contends that the trial court erred by denying her claim for revocation of acceptance under MISS. CODE ANN. § 75-2-608, under which a buyer may revoke acceptance of a lot or commercial unit with a "non-conformity" that "substantially impairs its value to him." We find no clear error in the district court's factual conclusions. Service manager Don Winchester testified that the shop repeatedly tried and failed to replicate Cook's alleged difficulty with the generator, and Dr. Smith was able to explain the alleged generator failure by reference to the incorrect operation to which Cook testified in his deposition. The fact that Cook's deposition testimony differed from his testimony at trial, along with the fact that Cook had read the manual on the morning of trial, provided a reasonable basis for discounting his testimony. We therefore hold that the district court did not clearly err in finding that the plaintiff had failed to make her case that the generator was "non-conforming" under section 75-2-608.

Neither did the district court clearly err by finding that the braking problem did not substantially impair the value of the RV to her. Prator allowed Cook to drive the RV on an extended trip, with her child as a passenger, *after* the alleged defect was discovered. Winchester testified that the braking problem was not replicated by his staff and when he finally detected the pull it was very

5

minor. These facts undermine the appellant's allegation that the vehicle was substantially impaired. The district court did not clearly err in reaching the opposite conclusion, so we affirm the district court's decision to deny revocation of acceptance under MISS. CODE ANN. § 75-2-608.

### III. The Magnuson-Moss Warranty Act

The appellant next argues in her brief that she was entitled to elect a refund under section 2304(a)(4) of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq*. ("MMWA"). Appellant points out that 15 U.S.C. § 2301(7), which defines "implied warranty" for the purposes of the MMWA as an implied warranty under state law, states that this definition is subject to section 2304(a) of the MMWA. Section 2304(a) of the MMWA only applies to the minimum standards for *written* warranties. *See* 15 U.S.C. § 2304(a). Section 2304(a)'s effect on implied warranties is extremely modest: section 2304(a)(2) states that a written full warranty may not limit the duration of an implied warranty, and section 2304(a)(3) commands that a written full warranty may not exclude or limit consequential damages for breach of implied warranty without making that limitation conspicuous on the face of the document. In contrast, the appellant relies on section 2304(a)(4), which contains no reference to implied warranties and only contains minimum standards for written warranties. Because no written warranty is at issue in this case, the appellant's section 2304(a)(4) argument must be disregarded. There is therefore no need to continue on to consider the appellant's argument concerning the Mississippi Motor Vehicle Warranty Enforcement Act, MISS. CODE ANN. § 63-17-151 *et seq*., which is fortunate because this statute was not cited before the trial court and thus will not be considered in this court. *See Webb v. Cardiothoracic Surgery Assocs. of North Texas, P.A.*, 132

6

F.3d 532, 539 n.6 (5th Cir. 1998).[2]

The sole remaining application of the MMWA is to provide a federal forum for her Mississippi state law actions for breach of implied warranty. *See* 15 U.S.C. § 2310(d)(1), 2301(7). We therefore turn to those implied warranty claims.

## IV. Other Implied Warranty Claims

The appellant cited two other statutes in the trial court supporting her claim that the appellees had violated an implied warranty: MISS. CODE ANN. §§ 75-2-314 and 75-2-315. Appellant's briefs do not even cite section 75-2-315, the implied warranty of fitness for a particular purpose, and thus appellant has waived that point on appeal. *Taita Chem. Co., Ltd. v. Westlake Styrene Corp.*, 246 F.3d 377, 384 n.9 (5th Cir. 2001). Though appellant cites section 75-2-314, the implied warranty of merchantability, she does so only within the context of her erroneous interpretation of the MMWA as explained above. We will read her briefs liberally, however, *see id.*, and address the point as if she had appealed the district court's finding without adding the additional gloss of legal error. Under section 75-2-314, a seller of goods impliedly warrants that the goods will be merchantable, which includes the requirement that they be "fit for the ordinary purposes for which such goods are used." MISS. CODE ANN. § 75-2-314. The district court did not clearly err in finding that the RV was fit for its ordinary purposes. As discussed above, the appellees introduced evidence that the generator was not defective and that the brake pull was not serious enough to impair the vehicle's value for any of the usual purposes of an RV. The appellant did not introduce evidence so persuasive as to cause us

---

[2] By the same token, it is not clear that the appellant's MMWA argument was raised in the district court in the form in which it appears before this court. Neither the pretrial order nor the district court's opinion makes any mention of section 2304(a)(4). We are not sure the matter was not raised, however, and thus do not rely on the appellant's possible waiver in rejecting her argument.

to conclude that the district court clearly erred in its findings, and thus we affirm the district court on this point as well.

## Conclusion

The district court found there was no defect in the generator and the braking problem was very minor. The evidence does not persuade us that this conclusion was clearly erroneous, and it precludes recovery on all the appellant's theories of recovery. We affirm the decision of the district court.

AFFIRMED